Rodney L. WILLETT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3943.

Court of Appeals of Alaska.

July 31, 1992.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Following a jury trial presided over by Acting Superior Court Judge Larry C. Zervos, Rodney L. Willett was convicted of one count of interference with official proceedings and one count of assault in the second degree. Willett appeals his convictions, contending that there was insufficient evidence to support his conviction for interference with official proceedings and that the trial court erred in denying his request for a lesser-included offense instruction on the second degree assault charge. We affirm Willett's interference with official proceedings conviction, but reverse his conviction for assault.

Willett's convictions resulted from his assault of William Golding on the night of May 4–5, 1990. On the evening of May 4, Golding attended a large, outdoor beer party in Fairbanks. Golding drank beer for part of the evening and then went to his car, intending to sleep off the effects of the beer so that he could drive home. While Golding was passed out in his car, Willett pulled Golding out, threw him to the ground, and began kicking him.

Willett landed approximately five to twelve kicks to Golding's face, shoulders, and torso before bystanders separated him from Golding. Golding offered no resistance to Willett's assault, remaining unconscious throughout the episode. Golding's first recollection was awakening at the hospital, where a friend had taken him for treatment. As a result of being kicked, Golding's face was severely swollen; he suffered a cut almost two inches long on his upper lip and a second cut, approximately an inch long, over one of his eyes. Both cuts required sutures. The physician who treated Golding also thought that Golding might have had a fractured nose.

Willett's attack on Golding was apparently rooted in an incident that occurred on July 20 of the previous year, when Willett had become angry with Golding and had damaged Golding's car. As a result of that incident, Willett had been charged and convicted of criminal mischief in the second degree, a felony. Golding had testified against Willett before the grand jury and at Willett's trial in November of 1989. Willett was subsequently ordered to pay Golding three hundred and fifty dollars in restitution. At the May 4 party, a friend of Willett's had approached Golding and

warned him that Willett was at the party and was angry with Golding; this warning had prompted Golding to go to his car.

The state charged Willett with assault in the second degree pursuant to AS 11.41.-210(a)(1):

(a) A person commits the crime of assault in the second degree if

(1) with intent to cause physical injury to another person, that person causes physical injury to another person by means of a dangerous instrument[.]

In charging this offense, the state asserted that Willett's shod foot was a dangerous instrument.

The state also charged Willett with interference with official proceedings, in violation of AS 11.56.510(a)(1)(C):

(a) A person commits the crime of interference with official proceedings if the person

(1) uses force on anyone ... with intent to ...

(C) retaliate against a witness or juror because of participation by the witness or juror in an official proceeding[.]

The state's theory in charging this offense was that Willett had attacked Golding in retaliation for Golding's previous testimony against Willett before the grand jury and at trial on the criminal mischief charge.

■ After the state completed its case-in-chief at trial, Willett moved for a judgment of acquittal on the interference with official proceedings charge, arguing that the state had failed to produce any specific evidence to establish that the alleged assault had been motivated by a desire to retaliate against Golding for his prior testimony. Judge Zervos denied the motion, concluding that sufficient evidence had been presented to allow the case to go to the jury. On appeal, Willett renews his claim that there was no direct evidence produced establishing a retaliatory intent.

The standard of review to be applied to a denial of a motion for acquittal is whether fairminded persons could reasonably differ on whether guilt has been established beyond a reasonable doubt. In applying this standard, we must view the evidence and the inferences to be drawn in the light most favorable to the state. *Adams v. State*, 598 P.2d 503, 509 n. 8 (Alaska 1979) (citations omitted). "The same standard applies to review by an appellate court." *Siggelkow v. State*, 648 P.2d 611, 613 (Alaska App.1982). "No different standard applies when the state's evidence is circumstantial rather than direct." *Snyder v. State*, 661 P.2d 638, 641 (Alaska App.1983).

■ Applying these principles to the case at hand, we conclude that Judge Zervos did not err in denying Willett's motion for a judgment of acquittal. Here, the state proved Willett's commission of a deliberate and apparently unprovoked assault on Golding not long after Golding testified against Willett in a criminal trial. Willett had been convicted and had recently been ordered to pay Golding restitution.

Although this evidence was not direct proof of Golding's intent, it is circumstantial evidence from which the jury could properly infer that Willett acted with retaliatory purpose. In exercising its discretion to determine the weight and effect of the evidence presented at trial, the jury was entitled to give this circumstantial evidence as much weight as it might have given to direct evidence of intent. *Snyder*, 661 P.2d at 641. Considering the totality of the evidence in the light most favorable to the state, we believe that fair-minded jurors could reasonably have differed on the issue of Willett's intent. Accordingly, the evidence was sufficient to justify denial of Willett's motion for judgment of acquittal.

Willett next challenges his conviction for assault in the second degree. At the close of his trial, Willett asked Judge Zervos to give the jury a lesser-included offense instruction on assault in the fourth degree. The judge denied this request, and the jury found Willett guilty of second-degree assault. Willett contends that a lesser-included offense instruction was mandatory under the circumstances.

■ Under Alaska R.Crim.P. 31(c), a lesser-included offense is one that is "necessarily included in the offense charged." *See also State v. Minano*, 710 P.2d 1013

(Alaska 1985). A lesser offense is "necessarily included" in the offense charged when it would be impossible, in the context of the case, to convict of the charged offense without also convicting of the lesser. *Minano v. State*, 690 P.2d 28, 31 (Alaska App.1984), *rev'd on other grounds, State v. Minano*, 710 P.2d 1013 (Alaska 1985).

A trial court is required to give a lesser-included offense instruction when "there is a factual dispute as to an element of the greater offense so that the jury could rationally acquit on the greater offense and convict on the lesser offense." *Johnson v. State*, 665 P.2d 566, 569 (Alaska App.1983). Whether a factual dispute exists is determined by the "some evidence" test. *Cavanaugh v. State*, 754 P.2d 757, 758 (Alaska App.1988). *See also Nathaniel v. State*, 668 P.2d 851, 854–56 (Alaska App.1983). "Some evidence" is evidence " 'in light of which a reasonable juror could have entertained a reasonable doubt' as to the element in question." *Folger v. State*, 648 P.2d 111, 113 (Alaska App.1982) (quoting *LaLonde v. State*, 614 P.2d 808, 810 (Alaska 1980)).

The "some evidence" test is not a rigorous one:

> In order to satisfy the "some evidence" test, it is not necessary that the defendant testify or even offer direct evidence in his own behalf. Some evidence establishing a dispute as to a factual issue may arise from weakness in the prosecution's evidence or from impeachment of its witnesses. Similarly, circumstantial evidence presented as part of the state's case-in-chief may give rise to some evidence of a disputed fact.

*Nathaniel v. State*, 668 P.2d at 855 (citations omitted). To determine whether this test has been met in a particular case, the court must view the evidence in the light most favorable to the defendant. *Paul v.*

*State*, 655 P.2d 772, 776 (Alaska App.1982). As long as there is some evidence to support the defendant's theory of the case, any weakness or implausibility in that theory is a matter for the jury, not for the court. *See Folger v. State*, 648 P.2d at 113.

In the present case, as we have previously noted, Willett's charge of second-degree assault required the state to prove that he intentionally caused physical injury to Golding with a dangerous instrument (his shod foot). The fourth-degree assault instruction Willett proposed was based on AS 11.41.230(a)(1), under which he could be convicted for recklessly causing physical injury to Golding, regardless of whether he used a dangerous instrument:

> (a) A person commits the crime of assault in the fourth degree if
>
> (1) that person recklessly causes physical injury to another person[.]

In the context of Willett's case, the sole element that distinguished second-degree assault from fourth-degree assault was the use of a dangerous instrument.[1] The state does not dispute that the lesser offense of fourth-degree assault was necessarily included in the offense of second-degree assault, with which Willett was charged. The only issue is whether the element distinguishing the greater and lesser offenses—Willett's use of a dangerous instrument—was in dispute, that is, whether reasonable jurors, viewing the evidence in the light most favorable to Willett, might have entertained a reasonable doubt as to whether Willett's foot was a dangerous instrument.

This issue turns on the definition of "dangerous instrument," which is set forth in AS 11.81.900(b)(11):

> "dangerous instrument" means any deadly weapon or anything that, under the circumstances in which it is used, attempted to be used, or threatened to be

---

1. The two offenses also differed in their culpable mental state elements: second-degree assault requires proof of intent to cause physical injury, whereas fourth-degree assault requires proof only of recklessness. Recklessness is a lesser culpable mental state necessarily included in intentional conduct: "If acting recklessly suffices to establish an element, that element also is established if a person acts intentionally or knowingly." AS 11.81.610(c). In the present case, however, Golding did not dispute the element of intent. Thus, in context, the different culpable mental requirements did not differentiate the charged offense of second-degree assault from the lesser-included offense of fourth-degree assault.

used, is capable of causing death or serious physical injury.

"Serious physical injury," in turn, is defined in AS 11.81.900(b)(50):

(A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or

(B) physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy[.]

■ The state insists that there can be no reasonable doubt that Willett's feet were dangerous instruments under these definitions; thus, according to the state, Willett's use of a dangerous instrument was not actually in dispute. In advancing this argument, however, the state makes the mistake of interpreting the evidence in the light most favorable to the prosecution, instead of viewing it, as is required, in the light most favorable to Willett. Although the evidence indicating that Willett's feet were dangerous instruments may have been strong, it was certainly not conclusive; there was at least some evidence from which the jury might have found a reasonable doubt on the issue.

■ Feet, regardless of how they are shod, are not *per se* dangerous instruments. They may become dangerous instruments "if used in such a way as to be capable of causing death or serious physical injury." *Wettanen v. State*, 656 P.2d 1213, 1218 (Alaska App.1983). Whether a foot constitutes a dangerous weapon when used to kick another person is a fact-specific determination to be gleaned from the circumstances surrounding an assault; the inquiry in each case must center on the manner in which the kick was administered and the victim's vulnerability to the kick. *Id.* See also *Konrad v. State*, 763 P.2d 1369, 1375 (Alaska App.1988) (dismissing indictment for third-degree assault where prosecutor's instruction to the grand jury may have created the impression that the grand jury had to accept as a matter of law that defendant's hand was a dangerous instrument; grand jury should have been alerted to "the need for it to find, based on the evidence in the case before it, that the defendant used an instrument in a manner that actually created a substantial risk of death or serious physical injury.").

■ The state correctly observes that proof of an object's use in a manner that actually resulted in serious physical injury is normally *prima facie* evidence that the object was a dangerous instrument. *Konrad v. State*, 763 P.2d at 1374. Yet, here, the state did not charge Willett with actually inflicting serious physical injury on Golding; nor was the evidence so forceful as to compel a finding of serious physical injury. The state presented no evidence establishing that Golding's injuries were actually life-threatening, that is, that they occurred "under circumstances that create[d] a substantial risk of death." AS 11.81.900(b)(50)(A). And while the state presented evidence that Golding's injuries were potentially disfiguring and resulted in at least some impairment, it did not conclusively establish that the impairment would be "protracted" or that any disfigurement would inevitably be "serious and protracted." AS 11.81.900(b)(50)(B).

Viewing the evidence in the light most favorable to Willett, reasonable jurors could have found that Golding did not actually sustain serious physical injury.

Nevertheless, referring to the definition of "dangerous instrument" set out in AS 11.81.900(b)(11), the state insists that a shod foot is obviously "capable of causing death or serious physical injury," when used to kick a sleeping man in the face. The state thus reasons that Willett's foot was necessarily a dangerous instrument. As we have already indicated, however, this determination must be based on a case-specific analysis of the totality of the circumstances; for purposes of applying the "some evidence" test, that analysis must construe the evidence in the light most favorable to the defense.

At trial, estimates of the total number of kicks Willett delivered to Golding ranged from five to twelve; some of those kicks were aimed at or landed on Golding's shoul-

ders and torso. Although two prosecution witnesses testified that Willett was apparently wearing boots, Willett presented circumstantial evidence indicating that he may have been wearing tennis shoes. Apart from establishing that Golding had passed out and offered no resistance, the state presented no evidence indicating that Willett's kicks were delivered in an unusually dangerous manner. No medical witnesses testified concerning the degree of risk inherent in conduct such as Willett's.

Given these circumstances, we do not believe it would be irrational for a juror to entertain a reasonable doubt as to whether Willett's feet were dangerous instruments, particularly if the juror found that Golding had not actually sustained serious physical injury. The absence of serious physical injury would itself be circumstantial evidence upon which the jurors could rely in assessing the degree of risk actually caused by Willett's conduct.

Considering the totality of the record, we find there was at least some evidence to support a finding that Willett's feet were not dangerous instruments. Because Willett's use of a dangerous instrument was in dispute under the evidence at trial, we must conclude that the trial court erred in denying Willett's request for a lesser-included offense instruction on fourth-degree assault. This conclusion requires reversal of Willett's conviction for assault in the second degree.[2]

The conviction for interference with official proceedings is AFFIRMED. The conviction for assault in the second degree is REVERSED.

---

[2] On remand, as an alternative to re-trying Willett for second-degree assault the state should be allowed to request entry of judgment against Willett for fourth-degree assault. If the state so requests, the superior court should enter judgment on the lesser offense unless Willett can demonstrate that he would be unfairly prejudiced. *See Nix v. State,* 624 P.2d 823, 824–25 (Alaska App.1981).