David **RUPEIKS**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–10533.

Court of Appeals of Alaska.

Oct. 28, 2011.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

BOLGER, Judge.

David Rupeiks contends that his conviction for assault in the third degree should be reversed because there was insufficient evidence suggesting that he had used his fist as a dangerous instrument when he injured Terrence Christensen. We conclude that the manner in which Rupeiks attacked Christensen and the nature of Christensen's injuries show that Rupeiks's attack posed an actual and substantial risk of causing Christensen to suffer death or serious physical injury. We therefore affirm Rupeiks's conviction for assault in the third degree.

### Background

In July 2007, Rupeiks was fishing in Centennial Campground in Soldotna, when he was hit in the back of the neck with a full soda can. Rupeiks followed the teenager he thought had thrown the can back to one of the campsites. The occupants of the campsite were Christensen, his wife, and several teenagers.

After identifying the campsite, Rupeiks immediately went to a campground phone to call the police. It was shortly after three o'clock in the morning. Soldotna Police Officer Duane Kant responded to the call. He told the teenagers that, if they saw Rupeiks fishing in a particular spot, they should avoid him and find another spot. He returned to Rupeiks and told Rupeiks the same thing—that if Rupeiks arrived to see the boys fishing in a particular place, he should avoid them and find another place to fish.

After the officer left the campground, Rupeiks drove his truck to the Christensens' campsite to "gloat." As Rupeiks approached the campsite he yelled through the passenger window, "Go back to Washington," "You're ruining the fishing season," and "We don't want you here."

Christensen was exiting his tent as Rupeiks approached the campsite. Christensen approached the truck, intending to find out what was going on and to calm down the driver. Christensen walked up to the truck's passenger side window and bent down to look into the cab of the truck in order to identify the driver.

Rupeiks then grabbed Christensen's left arm, yanked his torso into the truck, and "clubbed" Christensen in the face, sending the side of his head "towards the frame of the window." Rupeiks then drove away while continuing to hold Christensen's arm inside the vehicle. Christensen eventually fell to the ground and rolled out of the way.

Christensen was transported by ambulance to the hospital. He had suffered a fracture of the frontal bone of his skull, a fractured orbital bone, and fractures to "several different pieces" of his cheekbone. The blow to his head also caused bleeding in two separate areas around his brain. The treating physician had Christensen transported to Anchorage where a neurosurgeon would be close by.

Christensen was released from the hospital the following day, but suffered "extreme pain" for three weeks. He attempted to return to work, but he was unable to perform fully for more than six months. Christensen also experienced extensive memory loss; as of the date of trial he still could not remember fully what happened at the campground.

At trial, the treating physician testified that Christensen's injuries were consistent with a single blow to the head with a blunt object. He testified that it was unlikely that Christensen had been hit with only a fist because he had never seen a fist cause such extensive injuries.

A grand jury indicted Rupeiks on charges of second-degree and third-degree assault for causing physical injury either intentionally or recklessly by means of a dangerous instrument—specifically, a "hand, fist, and/or unidentified object."

At trial, the State argued the "dangerous instrument" element under alternate theories—that Rupeiks either used a sap found in his truck or that his fist was the dangerous instrument that caused Christensen's injuries. The jury acquitted Rupeiks of second-degree assault and found him guilty of third-degree assault, unanimously agreeing in a special verdict form that Rupeiks's hand or fist had been used as a "dangerous instrument."

Following the trial, Rupeiks filed a motion for a new trial, arguing there was insufficient evidence to support a finding that Rupeiks used either his hand or fist as a dangerous instrument. Superior Court Judge Anna Moran denied the motion, finding sufficient evidence that Rupeiks used his hand in a manner capable of causing serious physical injury. Rupeiks now appeals his conviction.

### Discussion

█ When a defendant challenges the sufficiency of the evidence to support a criminal conviction, the appellate court is obliged to view the evidence, and all reasonable inferences to be drawn from that evidence, in the light most favorable to upholding the jury's verdict.[1] In applying this standard, this court must first resolve all conflicts and doubts presented by the evidence in favor of the verdict, and then ask whether, viewing the evidence in that light, a reasonable juror could have concluded that the State proved its case beyond a reasonable doubt.[2]

Assault in the third degree occurs where a person recklessly causes physical injury to another person by means of a dangerous instrument.[3] The statutory definition of "dangerous instrument" includes anything that, under the circumstances in which it is used, is capable of causing death or serious physical injury.[4]

█ Before a hand or foot can be a dangerous instrument, "the state must present particularized evidence ... that the manner in which the hand was used in the case at issue posed an actual and substantial risk of causing death or serious physical injury."[5] An actual and substantial risk is something more than a risk that is merely hypothetical or abstract.[6] In making this inquiry, we have said it is important not to focus solely on the resulting injuries because it is possible the injuries were unforeseeable at the time of the assault.[7] The determination "must be based on a case-specific analysis of the totality of the circumstances."[8]

In this case, the circumstances were sufficient to allow reasonable jurors to find "an actual and substantial risk of causing death or serious physical injury."[9] The jury heard testimony that Rupeiks grabbed Christensen's left arm and jerked his torso into the truck, holding him there while he punched Christensen in the face with enough force to fracture his facial bones in three places and cause bleeding in two areas around his brain.

The evidence suggested that the blow Rupeiks delivered was particularly violent. The treating physician testified that the injuries were consistent with a single blow to the head and that he had never seen a fist cause such serious injuries. The evidence also suggested that Christensen was especially vulnerable to incurring a serious injury. Christensen's ability to defend himself was compromised because he was off balance and held inside the truck by the arm.

The totality of this evidence was sufficient to allow reasonable jurors to find "an actual and substantial risk of causing death or serious physical injury"—a risk that was more than "hypothetical or abstract."[10] There-

1. *Johnson v. State,* 188 P.3d 700, 702 (Alaska App.2008).

2. *Id.*

3. AS 11.41.220(a)(1)(B).

4. AS 11.81.900(b)(15)(A) (indicating "dangerous instrument" means "any deadly weapon or anything that, under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury").

5. *Konrad v. State,* 763 P.2d 1369, 1374 (Alaska App.1988) (hands); *see also Wettanen v. State,* 656 P.2d 1213, 1218 (Alaska App.1983) (feet).

6. *Konrad,* 763 P.2d at 1373–74.

7. *Wettanen,* 656 P.2d at 1218.

8. *Willett v. State,* 836 P.2d 955, 959 (Alaska App. 1992); *see also Konrad,* 763 P.2d at 1374 ("[T]he actual determination of whether a dangerous instrument was used must be made on a case-by-case basis, based on the totality of the circumstances surrounding the actual use of the object in question." (quoting *Carson v. State,* 736 P.2d 356, 361 (Alaska App.1987))).

9. *Konrad,* 763 P.2d at 1374.

10. *Id.* at 1374.

fore, there was sufficient evidence for reasonable jurors to conclude that Rupeiks used his hand as a dangerous instrument.

### Conclusion

We AFFIRM the superior court's judgment.