**Yong H. YI, Appellant,**

v.

**Harris S. YANG, Sharon Yang, Max Arthur Lamoureaux, Y & I Corporation, Officer Lawrence Peyton Merideth, and City of Fairbanks, Appellees.**

No. S–13427.

Supreme Court of Alaska.

July 20, 2012.

---

Robert John, Law Office of Robert John, Fairbanks, for Appellant.

Paul J. Ewers, City Attorney, Fairbanks, for Appellees Merideth and City of Fairbanks.

No appearance for remaining Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

A man was arrested for misdemeanor crimes after an altercation arising from a business dispute. He brought civil claims against a police officer and the officer's municipal employer based on the arrest. The superior court granted a motion for summary judgment and dismissed all claims against them. We affirm the superior court's decision because: (1) the police officer had probable cause to make a felony arrest, and, therefore, any perceived deficiencies in the misdemeanor arrest process are irrelevant; and (2) no municipal policy deprived the arrestee of property, and, therefore, the municipality did not violate the arrestee's constitutional rights.

## II. FACTS AND PROCEEDINGS

### A. Facts

The Klondike Inn and the Klondike Restaurant and Bar are located across the street from each other in Fairbanks. At the time of the events underlying this appeal, Y & I Corporation owned the Klondike Inn. Harris Yang was the registered agent of Y & I; Yang owned the Klondike Restaurant and Bar, as well as the liquor license for the bar, independently from Y & I.

In September 2004 Yang leased the Klondike Restaurant and Bar to Yong Yi (Yi); Yi's brother, Kenny Yi (Kenny), worked for Yi at the Klondike Restaurant and Bar. The business relationship between Yi and Yang rapidly deteriorated over concerns with carry-over inventory not included in the lease agreement and problems with the liquor license transfer.

On the morning of December 19, 2004, the Fairbanks Police Department received a series of 911 calls concerning the Klondike Inn

and the Klondike Restaurant and Bar. The first caller identified himself as Joe Hayes, calling on Yang's behalf, and requested police assistance removing what he referred to as "the management group" from the Klondike Restaurant and Bar. Hayes represented to the dispatcher that Yang had a writ of assistance to take possession, a statement later revealed to be false. The dispatcher responded that Yang needed to bring the writ to the police station, and after verification, the Department could provide a civil standby on an officer-available basis.

The next caller identified himself as John Dockery, from the front desk of the Klondike Inn. Dockery requested police assistance removing Yi and Kenny from the Klondike Restaurant and Bar. Dockery's 911 call was interrupted by a third call.

The third caller identified himself as Kenny, from the Klondike Restaurant and Bar. Kenny reported that a man he did not recognize had attempted to break into the Klondike Restaurant and Bar. Kenny claimed to be waiting outside by a red Dodge Durango; the dispatcher told him to remain where he was, not make any contact with the alleged perpetrator, and wait for the police to arrive.

The police dispatcher then returned to Dockery's call, and Dockery reported Kenny was attempting to break into the Klondike Restaurant and Bar. The dispatcher told Dockery that someone was on the way. The dispatcher then contacted officers and advised that callers from the Klondike were reporting contradictory allegations of attempted break-ins.

The fourth caller identified herself as the bartender at the Klondike Restaurant and Bar, calling on Kenny's behalf. She reported a robbery attempt and that a silver mini-van had attempted to run someone over. The bartender handed the telephone to Kenny, who reported that someone had attempted to run Yi and him over with a truck. The call ended when officers arrived on scene.

The fifth caller identified himself as Max Lamoureaux, an employee of the Klondike Inn. Lamoureaux stated he was locked inside the Klondike Inn with John Lee. He reported that unidentified persons had smashed into the white Ford truck he was driving, and "chased us down, jumped in the back of the truck, shattered the window." The call ended when an officer approached the Klondike Inn.

Officer Lawrence Merideth and three other officers arrived on scene around 9:45 a.m. Officer Merideth observed a silver mini-van stuck in a snowbank and a white Ford truck left running and parked at an odd angle outside the Klondike Inn. The truck's front and rear windows were shattered. Officer Merideth entered the office of the Klondike Inn and made contact with Lamoureaux and Lee. Another officer made contact with a group of people standing outside the Klondike Restaurant and Bar, including Yi and Kenny.

Officer Merideth did not record his conversation with Lamoureaux, but according to Officer Merideth, Lamoureaux relayed the following version of events. Lamoureaux identified himself to Officer Merideth as a manager of the Klondike Inn and stated he had traveled to Fairbanks from Anchorage to help serve eviction papers on Yi. Lamoureaux and Lee had posted eviction paperwork around 8:00 a.m. and attempted to leave in the white Ford truck around 9:30 a.m. A silver mini-van blocked their path. Kenny exited the mini-van and began yelling at Lamoureaux and Lee. Kenny jumped into the back of the truck and used a broom handle to break out the back window. Yi threw an object at the front windshield of the truck, breaking it; Yi then jumped into the back of the truck and Kenny jumped out. Yi repeatedly attempted to strike Lamoureaux and Lee with the broom handle—his attempts were successful at least once, striking Lamoureaux's wrist and breaking his watch. Lamoureaux attempted to drive away, but the silver mini-van collided into the truck's driver's side door. Lamoureaux and Lee retreated into the Klondike Inn office, chased by the broom-handle-wielding Yi. Lamoureaux was in fear and thought he would have been killed if Yi and Kenny had the opportunity.

Officer Merideth contacted two witnesses who corroborated portions of Lamoureaux's version of the events. Yi and Kenny relayed

their version of the events to another officer as follows. They observed Lamoureaux and Lee attempting to break into the Klondike Restaurant and Bar. After Kenny called the police, the white Ford truck attempted to leave. Yi and Kenny tried to stop the truck from leaving. The driver of the white Ford truck tried to run them over. Yi and Kenny's version of jumping in the back of the truck and breaking the windows was largely the same as Lamoureaux's, although they believed their actions were justified because they were trying to stop the truck from leaving. Yi and Kenny also admitted to Officer Merideth that they had broken the truck's windows.

Officer Merideth directed another officer to arrest Yi and Kenny. They were arrested and told that Officer Merideth was the arresting officer. They were not told why they were under arrest or that it was a delegated citizen's arrest.

Lamoureaux signed citizen's arrest forms for both Yi and Kenny. Later during this litigation, Officer Merideth could not specifically recall explaining the citizen's arrest procedure to Lamoureaux, but stated it is his routine practice to give an explanation and there was no reason he would not have done so in this case. Although he also could not specifically recall what happened on December 19, Officer Merideth stated it is his routine practice to have the citizen sign the form contemporaneously with the arrest; however, notations on the bottom of the form indicate Officer Merideth prepared the forms at 1:12 p.m. Lamoureaux stated he signed the forms "within an hour or so" of the police arriving. Lamoureaux stated he knew he was participating in the arrest, but did not know he "had the sole discretion in arresting" the Yis.

Consistent with the citizen's arrest forms, Yi was charged with two counts of assault in the fourth degree under AS 11.41.230 and one count of criminal mischief in the fourth degree under AS 11.46.484. These misdemeanor charges were later dismissed.

### B. Proceedings

On December 13, 2004, six days prior to his arrest, Yi filed a pro se complaint against Yang alleging breach of contract and other claims. After his arrest Yi retained counsel and filed an amended complaint adding other defendants, including Officer Merideth and the City of Fairbanks. Relevant to this appeal, Yi asserted federal claims under 42 U.S.C. § 1983 for deprivation of Fourth and Fourteenth Amendment rights and state law claims for false arrest against Officer Merideth and the City.

Officer Merideth and the City moved for summary judgment on all claims against them. The superior court granted the motion but did not issue a detailed written order, only a bench ruling after oral argument followed by a brief written order. Based on the superior court's oral argument comments, it appears qualified immunity was the driving force behind granting summary judgment.

Yi appeals the superior court's grant of summary judgment to Officer Merideth and the City.

### III. STANDARD OF REVIEW

We review a grant of summary judgment "de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[1] On review, "we view the facts in the light most favorable to the non-moving party."[2] "We may affirm a grant of summary judgment on any basis appearing in the record."[3] "The applicability of both state and federal immunity are questions of law that are . . . subject to de novo review."[4]

---

1. *Lot 04B & 5C Block 83 Townsite v. Fairbanks N. Star Borough*, 261 P.3d 422, 424 (Alaska 2011) (quoting *Lot 04B & 5C, Block 83 Townsite v. Fairbanks N. Star Borough*, 208 P.3d 188, 191 (Alaska 2009)).

2. *Id.* (quoting *Lot 04B & 5C*, 208 P.3d at 191) (internal quotation marks omitted).

3. *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008)

(quoting *Parker v. Tomera*, 89 P.3d 761, 765 (Alaska 2004)).

4. *Russell ex rel. J.N. v. Virg–In*, 258 P.3d 795, 802 (Alaska 2011) (quoting *Smith v. Stafford*, 189 P.3d 1065, 1070 (Alaska 2008)).

"Under de novo review, we apply 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[5]

## IV. DISCUSSION

### A. Yi's Arrest–Related Claims

 Yi bases his arrest-related claims against Officer Merideth and the City on his assertion that his citizen's arrest was invalid because Lamoureaux lacked sufficient intent to effect a citizen's arrest and there was unnecessary delay between the actual incident and the completion of the citizen's arrest paperwork. Yi then argues that because the citizen's arrest was invalid, he was arrested for a misdemeanor offense committed outside Officer Merideth's presence. Yi contends this violated: (1) his Fourth Amendment right to be free from warrantless arrests for misdemeanor criminal offenses committed outside an officer's presence; and (2) AS 12.25.030(a)(1).[6] According to Yi, the latter violation constitutes the state-law tort of false arrest.[7]

We have never clarified the delegated citizen's arrest doctrine adopted by the court of appeals in *Moxie v. State.*[8] And whether the Fourth Amendment contains an "in the presence" requirement for misdemeanor arrests appears to be a question unresolved by the United States Supreme Court.[9] But we do not need to consider or resolve these issues, or related issues of qualified immunity, because the superior court's decision is otherwise affirmable.

 Officer Merideth argues that the arrest was supported by probable cause that Yi had committed a felony. Felony arrests are not governed by an "in the presence requirement" under federal or Alaska law.[10] We have explained probable cause as follows:

> Probable cause to arrest exists if the facts and circumstances known to the officer would support a reasonable belief that an offense has been or is being committed by the suspect.... Probable cause is determined objectively and requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred.[11]

The existence of probable cause is a mixed

---

5. *State v. Native Vill. of Tanana,* 249 P.3d 734, 737 (Alaska 2011) (quoting *Glamann v. Kirk,* 29 P.3d 255, 259 (Alaska 2001)).

6. Alaska Statute 12.25.030 provides, in relevant part:
 (a) A private person or a peace officer without a warrant may arrest a person
 (1) for a crime committed or attempted in the presence of the person making the arrest;
 (2) when the person has committed a felony, although not in the presence of the person making the arrest;
 (3) when a felony has in fact been committed, and the person making the arrest has reasonable cause for believing the person to have committed it.

7. False arrest is not a separate tort, but merely one way to commit the tort of false imprisonment. *Prentzel v. State, Dep't of Pub. Safety,* 169 P.3d 573, 582 n. 17 (Alaska 2007) (quoting *Waskey v. Municipality of Anchorage,* 909 P.2d 342, 345 (Alaska 1996)). "The elements of the false arrest-imprisonment tort are (1) a restraint upon the plaintiff's freedom, (2) without proper legal authority." *Waskey,* 909 P.2d at 345 (citing *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 461 (Alaska 1986)).

8. 662 P.2d 990 (Alaska App.1983) (holding that a private person can initiate an arrest and delegate the task to a police officer); *see generally* Lael Harrison, *Citizen's Arrest or Police Arrest? Defining the Scope of Alaska's Delegated Citizen's Arrest Doctrine,* 82 Wash. L.Rev. 431, 433 (2007) (noting a "lack of clarity" in the area of delegated citizen's arrests).

9. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 341 n. 11, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ("We need not, and thus do not, speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests.").

10. *See Maryland v. Pringle,* 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ("A warrantless arrest of an individual in a public place for a felony ... is consistent with the Fourth Amendment if the arrest is supported by probable cause."); AS 12.25.030(a)(3); *see also McCoy v. State,* 491 P.2d 127, 130 (Alaska 1971) (interpreting AS 12.25.030(a)(3) and holding "a peace officer, without a warrant, may arrest a person for a felony when the officer has probable cause to believe that a felony has been committed and probable cause to believe that the person committed it").

11. *State v. Joubert,* 20 P.3d 1115, 1118–19 (Alaska 2001) (internal citations and quotation marks omitted).

question of law and fact.[12] In a criminal context the question is resolved pretrial with the judge applying law and finding fact.[13] In a civil action a probable cause determination is a jury question, unless no material facts are in dispute and summary judgment is appropriate.[14]

 Officer Merideth argues he had probable cause to arrest Yi for the felony crime of assault in the third degree.[15] Probable cause to arrest for assault in the third degree exists where the facts and circumstances known to an officer would support a reasonable belief that the arrestee recklessly placed another in fear of imminent serious physical injury [16] by means of a dangerous instrument.[17] It is undisputed that Officer Merideth heard Lamoureaux's statements of fear for his life based on Yi's actions. It is also undisputed that Yi used a broom handle to break out the windows of the truck and attack Lamoureaux.[18] These facts were supported by witness statements, Yi's admissions, and a scene consistent with victim and witness statements.

 Yi argues that summary judgment on probable cause is inappropriate because there is a reasonable inference "that Yi was not acting toward injuring Lamoureaux but rather in order to stop the vehicle from making its getaway." "But probable cause is by definition a standard that hinges on probability rather than certainty, so a showing of probable cause need not rule out other explanations that are merely possible." [19] Thus Yi's alternative explanation of possibly justified behavior does nothing to diminish the existence of probable cause. Yi cites to authority holding probable cause does not exist where an officer relies "solely on an unexamined charge by a [victim] ... and ha[s] done no further investigation." [20] But Officer Merideth observed physical evidence and heard multiple witness statements in addition to Lamoureaux's statements. Yi also argues he is entitled to an additional favorable inference because Officer Merideth did not record his conversations at the scene.[21] But this rule is only applicable where police lose or destroy evidence, not where police fail to create evidence.[22]

**12.** *Bessette v. State*, 145 P.3d 592, 594 (Alaska App.2006) (citing *Chandler v. State*, 830 P.2d 789, 792 (Alaska App.1992)).

**13.** *See* Alaska R.Crim. P. 12.

**14.** *See City of Nome v. Ailak*, 570 P.2d 162, 170 (Alaska 1977); *see also Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir.2003).

**15.** AS 11.41.220(a)(1)(A) ("A person commits the crime of assault in the third degree if that person recklessly places another person in fear of imminent serious physical injury by means of a dangerous instrument[.]").

**16.** AS 11.81.900(56) defines "serious physical injury" as:
(A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or
(B) physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy[.]

**17.** AS 11.81.900(15) (" 'dangerous instrument' means ... any deadly weapon or anything that, under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury[.]").

**18.** This is not to say a broom handle is always a "dangerous instrument" as defined by AS 11.81.900(15). But "under the particular circumstances presented here, [Yi] used [the broom handle] in a manner that created a substantial risk of serious physical injury" sufficient to support probable cause. *See Hutchings v. State*, 53 P.3d 1132, 1137 (Alaska App.2002); *see also Rupeiks v. State*, 263 P.3d 57, 59 (Alaska App.2011).

**19.** *State v. Koen*, 152 P.3d 1148, 1152 (Alaska 2007) (discussing probable cause in warrant context).

**20.** *John v. City of El Monte*, 515 F.3d 936, 941 (9th Cir.2008) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)).

**21.** *See Thorne v. Dep't of Pub. Safety, State of Alaska*, 774 P.2d 1326 (Alaska 1989) (holding intentional destruction of evidence by state violates due process and proper remedy is a presumption that evidence would have been favorable to accused).

**22.** *State v. Amend*, 250 P.3d 541, 545 (Alaska App.2011) (stating due process does not "require[ ] the police to record or photograph all investigative procedures, even though there may be a disagreement about what happened").

■ We hold that because felony probable cause existed, Yi's Fourth Amendment rights were not violated and Officer Merideth had proper legal authority under state law for the arrest. The fact that Officer Merideth did not actually arrest Yi for a felony is irrelevant. The United States Supreme Court has consistently rejected considering an officer's state of mind, including the crime articulated as the basis for the arrest, when reviewing the existence of probable cause.[23] We similarly determine the existence of probable cause under an objective standard without regard to the officer's subjective intent.[24]

■ Yi's arrest-related claims against Officer Merideth and the City therefore must fail.[25] We uphold the superior court's grant of summary judgment on Yi's arrest-related claims on this alternative ground, without addressing qualified immunity, the bounds of delegated citizen's arrests, or whether the Fourth Amendment contains an "in the presence" requirement for misdemeanor arrests.[26]

---

**23.** *See, e.g., Devenpeck v. Alford,* 543 U.S. 146, 153–54, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (rejecting decision that alternative basis for probable cause could not be considered in § 1983 case).

**24.** *See State v. Joubert,* 20 P.3d 1115, 1119 (Alaska 2001) (stating "[p]robable cause is determined objectively"); *see also Bertilson v. State,* 64 P.3d 180, 185 (Alaska App.2003) (stating an "officers' subjective reasons for making the arrest are irrelevant" to a probable cause determination).

**25.** Under Alaska law, a principal has no respondeat superior liability where the agent's actions are not tortious. *Cf. Taranto v. N. Slope Borough,* 909 P.2d 354, 358 (Alaska 1996) (Under respondeat superior, "an employer will be held liable for both negligent and intentional *torts* of its employee.") (emphasis added). Likewise, a municipality cannot be held liable under § 1983 if there is no underlying violation of a federal right. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("[I]f the [officer] inflicted no constitutional injury on [the plaintiff], it is inconceivable that [the municipality] could be liable.").

**26.** *See State, Dep't of Health & Soc. Servs. v. Valley Hosp. Ass'n,* 116 P.3d 580, 584 (Alaska 2005) ("This is consistent with our practice of reaching constitutional issues only when the case

## B. Yi's Due Process Claim Against The City

■ Yi argues the City deprived him of property when an officer told Yi's employees not to enter the Klondike Restaurant and Bar after the altercation. When the bartender told an officer she was returning to work, the officer responded: "I might be wrong, but for right now, let's stay out of the bar. Okay?"

■ A municipality can be held liable under § 1983 only when its policy or custom results in the deprivation of a right secured by the United States Constitution or federal statute.[27] In the superior court, Yi argued the City had a policy of providing civil standbys, the officer followed this policy, and that this policy caused Yi a constitutional deprivation of property.[28] On appeal, Yi argues the City failed to train Officer Merideth in the proper civil standby procedures. "[T]he inadequacy of police training may serve as the basis of § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[29] We have held that "training can justifiably be said to repre-

---

cannot be fairly decided on statutory or other grounds.").

**27.** *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24 & n. 7, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (describing the required causal link between policy and deprivation as "moving force" and an "affirmative link").

**28.** The record does not explain what a "civil standby" is, but it appears to be the police response to a writ of assistance. *Compare Mahan v. State,* 51 P.3d 962, 964 (Alaska App.2002) (describing "writ of assistance" as "a court order directing law enforcement officers to assist a person in enforcing a prior court order when there is reason to believe that enforcement efforts may be met with forcible opposition"), *with Harris County v. Hinojosa,* 294 S.W.3d 737, 741 (Tex.App.2009) (describing "civil standby" as "when an officer is basically called ... to make sure there is no breach of the peace").

**29.** *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), *quoted in Prentzel v. State, Dep't of Pub. Safety,* 53 P.3d 587, 595 (Alaska 2002).

sent policy when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy-makers can reasonably be said to have been deliberately indifferent to the need."[30]

■ Neither the City's policy of providing civil standbys nor its alleged failure to train Officer Merideth in the proper civil standby procedures can serve as a basis for liability under § 1983. There is no dispute that the police response was not a civil standby, but rather was a criminal investigation. And we reject Yi's failure to train argument because it was never raised below.[31]

■ Yi also argues on appeal that Officer Merideth's actions were consistent with another City policy, identifying a policy of following the laws of the State of Alaska. The City's policy of following State laws cannot serve as the basis for § 1983 liability. As the Seventh Circuit noted:

> It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the "policy" of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality.[32]

Because Yi has not demonstrated a City policy sufficient to support municipal liability under § 1983, we rely on this alternative ground to affirm the superior court's grant of summary judgment on this claim.

## V. CONCLUSION

We AFFIRM the superior court's decision.

CHRISTEN, Justice, not participating.

---

**30.** *Prentzel,* 53 P.3d at 595 (quoting *Hildebrandt v. City of Fairbanks,* 863 P.2d 240, 246 (Alaska 1993)) (internal marks omitted).

**31.** *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.,* 221 P.3d 977, 985 (Alaska 2009) ("We have held that, in general, 'a party may not present new issues or advance new theories to secure a reversal of a lower court decision.'" (quoting *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985))).

**32.** *Surplus Store & Exch., Inc. v. City of Delphi,* 928 F.2d 788, 791–92 (7th Cir.1991).