Cedric **CUTLER**, Appellant,

v.

**KODIAK ISLAND BOROUGH**, Appellee.

No. S–14215.

Supreme Court of Alaska.

Dec. 21, 2012.

---

10. 183 P.3d 486, 489–90 (Alaska 2008) (emphasis omitted).

11. Alaska R. Civ. P. 90.3 cmt. VI(B)(2).

12. 183 P.3d at 489, 490.

13. Alaska R. Civ. P. 90.3 cmt. VI(B)(2).

Melvin M. Stephens, II, Kodiak, and Jill C. Wittenbrader, Law Office of Jill Wittenbrader, Kodiak, for Appellant.

Matthew Singer and Cheryl Mandala, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, WINFREE, and STOWERS, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Boroughs are statutorily authorized to provide and charge residents for garbage-collection services. The primary issue in this appeal is whether boroughs also have the implied or incidental authority to record

a real property lien to secure payment of garbage-collection fees. We conclude they do not have that authority.

## II. FACTS AND PROCEEDINGS

In 2007 Virgilio and Rosemarie Sabado hired Roger David to tear down a fire-damaged house on their property in Kodiak. In September David opened a commercial garbage account with the Kodiak Island Borough (Borough) and paid a deposit for placement of a construction dumpster near the property. David accrued about $5,000 in garbage-service charges. The Borough applied David's deposit to this amount and began sending him monthly bills for the balance. No payment was made and David's account became delinquent.

In October 2008 the Sabados sold the property to Cedric Cutler, who was unaware of David's garbage account with the Borough. In December the Borough sent David a letter advising him that a lien could be placed on the property if the account remained unpaid. No payment was made, and in January 2009 the Borough recorded a lien against the property. The Borough then sent lien-notice letters to David and the Sabados, who were still listed as the property owners in the Borough's tax files.

In February 2010 the Borough petitioned to foreclose outstanding tax and garbage-service liens for years 2009 and prior. Cutler learned of the foreclosure proceeding and filed an answer and counterclaim, asserting the lien against his property was invalid and seeking damages for wrongful recording of a nonconsensual common law (NCCL) lien.[1]

In April the Borough released the lien and sought dismissal of Cutler's counterclaim. Cutler argued that the lien had been wrongfully recorded and dismissal was inappropriate. He also argued that the superior court should not enter default judgment with respect to the Borough's foreclosure of other garbage-service liens. Both parties moved for summary judgment on Cutler's counterclaim.

In June the superior court entered default judgment with respect to the other garbage-service liens. In December the court granted the Borough's summary judgment motion and denied Cutler's summary judgment motion, ruling that the Borough's lien was not a wrongful NCCL lien. The court did not address the Borough's alternative argument that even if the lien were a wrongful NCCL lien, the Borough was entitled to statutory immunity.

Cutler appeals the superior court's summary judgment ruling and default judgment entry with respect to the other garbage-service liens.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, affirming "when there are no genuine issues of material fact, and the prevailing party ... was entitled to judgment as a matter of law."[2] "The interpretation of a statute is a question of law to which we apply our independent judgment, interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[3] The applicability of state-law immunity is a question of law that we review de novo, applying "the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

---

1. *See* AS 09.45.169(2) (defining NCCL lien as not provided for by state or federal statute, not dependent on property owner's consent for its existence, and not imposed by a court recognized under state or federal law); AS 09.45.167(a) (providing that a person who records an NCCL lien is liable to the property owner for damages, costs, and attorney's fees).

2. *Fraternal Order of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011) (quoting *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

3. *Henrichs v. Chugach Alaska Corp.*, 260 P.3d 1036, 1040 (Alaska 2011) (quoting *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008)).

4. *Yi v. Yang*, 282 P.3d 340, 344–45 (Alaska 2012) (quoting *State v. Native Vill. of Tanana*, 249 P.3d 734, 737 (Alaska 2011)) (citing *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011)).

## IV. DISCUSSION

### A. The Lien

#### 1. Background

The Borough recorded the garbage lien under Kodiak Island Borough Code (KIBC) 08.25.065(E), which then provided that "[e]very charge to a person ... in connection with garbage collection ... constitutes a lien chargeable against the property and has a status the same as if the charge had been levied or assessed as a property tax."[5] The provision also provided that the Borough could foreclose such a lien "in the same manner as any other lien or mortgage against the property for nonpayment."[6]

Cutler argued the lien was an NCCL lien, statutorily defined as a lien that: "(A) is not provided for by a specific state or federal statute; (B) does not depend on the consent of the owner of the property affected for its existence; and (C) is not an equitable, constructive, or other lien imposed by a court recognized under state or federal law[.]"[7] A person who wrongfully records an NCCL lien is liable to the property owner for actual and punitive damages, as well as costs and reasonable attorney fees.[8]

To determine whether the lien was an NCCL lien, the superior court considered two issues: (1) whether the Borough ordinance was a state statute, its equivalent, or not a state statute at all; and (2) if it was a state statute or its equivalent, whether the ordinance was an authorized borough power. The court concluded the ordinance was the equivalent of a state statute because "all borough powers are state powers with which the state has entrusted the borough." The court also concluded the Borough had authority to enact and enforce KIBC 08.25.065(E) because state statutes give boroughs authority to provide garbage-collection services, set service rates, and assess penalties for violation of garbage ordinances.[9]

#### 2. Lack of authority for code provision

Cutler argues the Borough does not have authority to create liens to secure payment for garbage services. He notes that neither AS 29.35.050 nor AS 29.35.210, the statutes from which the Borough derives its garbage-service authority, "makes any mention of the authority to turn garbage collection charges into ... liens against the real property served." He also argues that authority to impose penalties does not include authority to record liens, especially liens having the same priority as property tax liens. The Borough responds that "when viewed within the liberal construction afforded grants of authority to boroughs, the statutes authorizing creation and enforcement of a garbage services system 'necessarily or fairly imply' authority to penalize non-payment of accounts."

We recognize that the Borough's authority to pass ordinances is liberally construed,[10] but its "powers are not unbounded."[11] The Borough may only exercise powers "specifically enumerated in Title 29 of the Alaska Statutes, or those 'necessarily or fairly implied in or incident to the purpose of all powers and functions conferred in [that] title.'"[12] The Borough has specific authority to provide garbage services and to set charges and non-payment penalties, but not to record liens for failure to make payment. We are left, then, with the question of whether the authority to record real property liens to secure payment of garbage-service charges is necessarily or fairly implied in or

---

5. KIBC 08.25.065(E) (1996) (superseded in 2010).

6. *Id.*

7. AS 09.45.169(2).

8. AS 09.45.167(a).

9. *See* AS 29.35.210(a)(4) (authorizing boroughs to provide garbage services, subject to AS 29.35.050); AS 29.35.050(a)(1) (authorizing garbage collection); AS 29.35.050(a)(6) (authorizing garbage-collection fees); AS 29.35.050(a)(7) (authorizing penalties for garbage-ordinance violations).

10. AS 29.35.400 ("A liberal construction shall be given to all powers and functions of a municipality conferred in this title.").

11. *Kenai Peninsula Borough v. Associated Grocers, Inc.*, 889 P.2d 604, 606 (Alaska 1995).

12. *Id.* (quoting AS 29.35.410).

incident to its statutory garbage-collection authority.

We conclude that the Borough lacks authority to record nonconsensual property liens to secure payment for garbage-related charges. We do not believe that when the legislature authorized municipalities to "require property owners or occupants of premises to use the garbage ... system provided" and to fix charges for those services,[13] it intended to authorize property liens, especially liens having the same super-priority as property tax liens,[14] to secure payment for those services. Otherwise, we would be forced to conclude that municipalities may record property liens anytime the legislature authorizes them to provide property-related services and fix charges for those services. We reject such an interpretation.

Our conclusion is supported by the fact that in another municipal service context, the legislature specifically granted municipalities authority to record property liens. The legislature expressly authorized municipalities to impose fees on residential property owners if the municipal police department goes to the property an excessive number of times, and to record property liens (without the same priority as property tax liens) to secure the fees.[15] This specific grant of authority strongly suggests the legislature does not intend that municipalities have the general authority to record property liens securing payment for property-related services, and certainly not the authority to record such liens with the same priority as property tax liens.

Public policy dictates the same conclusion. In another context where a municipality recorded a lien without express statutory authority, we stated that "[p]ublic policy would be thwarted" if each municipality were allowed to develop a number of different lien systems and noted that "the determination of lien priorities would be unduly complicated."[16] We further explained that the lien-recording issue "should be addressed by specific legislation rather than by municipal, or judicial, fiat."[17] This holds true in the present context as well—if the Borough believes lien-recording powers are necessary to secure payment for garbage services, it should ask the legislature to provide authority for such powers.

We therefore conclude that the Borough did not have authority to implement its code provision. The authority to record property liens is neither incident[18] to nor implied[19] in the Borough's authority to provide garbage services and set related charges, nor in the Borough's authority to set penalties.[20] Accordingly, we reverse the superior court's ruling on this issue.

### 3. Lack of consent

█ Cutler further argues the lien is an NCCL lien because he did not consent to its existence.[21] The Borough responds that the Sabados consented to the lien when they, through their agent David, opened the commercial garbage account and promised to

---

13. AS 29.35.050(a)(5)-(6).

14. *See* AS 29.45.300(b) (providing property tax lien "is prior and paramount to all other liens or encumbrances against the property").

15. AS 29.35.125.

16. *Fairbanks N. Star Borough v. Howard*, 608 P.2d 32, 34 (Alaska 1980) (holding property lien for nonpayment of sales tax was beyond borough's authority to collect sales tax).

17. *Id.* Following our *Howard* opinion, the legislature five years later expressly granted municipalities authority to record property liens, without the super-priority for property tax liens, to secure sales tax payment. AS 29.45.650(e); ch. 12, § 12, SLA 1985.

18. *See* BLACK'S LAW DICTIONARY 830 (9th ed. 2009) (defining "incident" as "[d]ependent upon, subordinate to, arising out of, or otherwise connected with (something else, usu[ally] of greater importance)").

19. *See id.* at 822 (defining "implied" as "[n]ot directly expressed; recognized by law as existing inferentially").

20. *See id.* at 1247 (defining "penalty" as "a sum of money exacted as punishment for either a wrong to the state or a civil wrong").

21. *See* AS 09.45.169(2)(B) (defining NCCL lien in part as a lien that "does not depend on the consent of the owner of the property affected for its existence").

comply with the garbage ordinances, including the lien provision. The Borough's argument is unpersuasive.

The record does not support the Borough's claim that the Sabados authorized David to act as their agent when applying for the commercial garbage account, let alone to act as their agent in consenting to the imposition of a lien on their property. And even if the record could support that claim, David's promise to comply with garbage ordinances could not equate to consent to the application of an invalid lien ordinance. Thus, we conclude there was no consent to the lien.

### 4. Conclusion

Because the garbage lien was not provided for by state statute and there was no consent, the lien was an NCCL lien. We therefore reverse the superior court's summary judgment ruling to the contrary.

### B. Borough Immunity

■ Alaska Statute 09.65.070(d)(2) immunizes a municipality from exercising or failing to exercise a discretionary function.[22] Discretionary function immunity preserves the separation of powers inherent to our form of government by recognizing that it is the function of the state and municipalities, and not the courts or private citizens, to govern.[23] Accordingly, decisions involving basic planning or policy are entitled to immunity, but "those that are merely operational in the sense that they implement plans or carry out policy" are not.[24]

The Borough argued to the superior court that it had discretionary function immunity under AS 09.65.070(d)(2) from Cutler's damages claim. Because the superior court concluded the lien was not an NCCL lien, it did not address the Borough's immunity defense.

Cutler argues on appeal that the Borough is not entitled to immunity under AS 09.65.070(d)(2). He contends the Borough failed to satisfy our planning-operational test because it did not argue that the lien involved basic planning or policy formulation. Cutler also argues that even if the Borough's actions involved basic policy, immunity is not available because the lien violated clearly established law. The Borough responds that the garbage-lien provision is policy-level action to collect "valid debts." The Borough explains that it "has established guidelines as to the circumstances under which it chooses to exercise [its lien] authority" and argues that such "budgetary policy choices" are entitled to immunity.

We agree with the Borough that it is immune from damages in this case. The Borough enacted the garbage-lien provision as a means to collect unpaid garbage-service fees. Because this represented the balancing of competing elements of legislative policy, the Borough is entitled to immunity for passing this ordinance.[25] The Borough is also immunized for recording the lien. The garbage-lien provision did not require the Borough to record a lien for unpaid garbage-service fees;[26] instead, it provided the Borough and its agents discretion in determining whether to record and foreclose on garbage-service liens. With this discretion, the Borough established guidelines to balance the competing elements of executive and budgetary policy. Here, the Borough, or more specifically its agents, balanced these elements when deciding to record the lien and foreclose on it.

---

**22.** AS 09.65.070(d)(2) specifically provides that "[a]n action for damages may not be brought against a municipality ... if the claim ... is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality ... whether or not the discretion involved is abused."

**23.** *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 976 (Alaska 2005) (citing *Estate of Arrowwood v. State*, 894 P.2d 642, 645 (Alaska 1995)).

**24.** *Id.* (citing *Johnson v. State*, 636 P.2d 47, 64 (Alaska 1981)).

**25.** *See id.* at 977 ("Our cases have recognized that if decisions require the state to balance 'the detailed and competing elements of legislative or executive' policy, they nearly always deserve protection by discretionary function immunity." (quoting *Indus. Indem. Co. v. State*, 669 P.2d 561, 563 (Alaska 1983))).

**26.** KIBC 08.25.065(E) (1996) (superseded in 2010).

Accordingly, the Borough's actions are entitled to discretionary-function immunity.[27]

### C. Claims Of Non-Appearing Parties

■ Cutler argues the superior court abused its discretion and erred when it entered default judgment against the other properties. He argues the court should not have entered default judgment while his challenge to the Borough's authority to assert those liens was before the court.

■ Adversity is the basic requirement for standing.[28] Other than his general interest in preventing the Borough from recording property liens to secure payment of garbage fees, Cutler does not point to a personal interest in the other properties that is adversely affected.[29] Accordingly, Cutler lacks standing to challenge the entry of default judgment against the other properties.

### V. CONCLUSION

Based on the foregoing, we REMAND the case to the superior court to determine the prevailing party, if any, and to award attorney's fees, if appropriate.

FABE, Justice, not participating.

---

**27.** *See State, Dep't of Transp. & Pub. Facilities v. Sanders*, 944 P.2d 453, 457–58 (Alaska 1997) (holding that where Department of Transportation regulations did not require department officials to enforce vehicle regulations, the department's decision not to do so was discretionary). We also reject Cutler's argument that the Borough is not entitled to immunity because it violated "clearly established law"—this additional inquiry is only necessary where it is alleged that a government official, rather than a municipality, has violated a statute or ordinance. *See Integrated Res. Equity Corp. v. Fairbanks N. Star Borough*, 799 P.2d 295, 301 (Alaska 1990) (discussing discretionary function immunity of government officials).

**28.** *Trs. for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987) (citing *Moore v. State*, 553 P.2d 8, 24 n. 25 (Alaska 1976)).

**29.** *See id.* ("Under the interest-injury approach, a plaintiff must have an interest adversely affected by the conduct complained of.").