*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES E. BARBER, | ) | |
| | ) | Supreme Court Nos. S-14475/14504 |
| Appellant, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court Nos. 1JU-11-00741 CI |
| | ) | 1JU-11-00932 CI |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | O P I N I O N |
| | ) | |
| Appellee. | ) | No. 6850 - December 6, 2013 |
| | ) | |

Appeals from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: James E. Barber, pro se, Juneau, Appellant. Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions & Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee. Cynthia L. Strout, Law Offices of Cynthia L. Strout, and Wallace H. Tetlow, Tetlow Christie, LLC, Anchorage, for Amicus Curiae Alaska Association of Criminal Defense Lawyers.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I.      INTRODUCTION

An indigent prisoner appealed two prison disciplinary actions to the superior court. For each appeal the superior court calculated a reduced filing fee

pursuant to AS 09.19.010.[1]  The prisoner failed to pay the filing fees and his appeals were dismissed.

The prisoner contends that he had no means of paying even the reduced filing fees and argues that the fee statute unconstitutionally deprived him of access to the courts.  We agree with the prisoner:  As applied in this case, AS 09.19.010 prevented the prisoner from exercising his right of access to the courts in violation of the Alaska Constitution's due process provision.  We therefore reinstate the prisoner's appeals.

## II.    FACTS AND PROCEEDINGS

### A.    First Disciplinary Action And Appeals

In May 2011 the State of Alaska, Department of Corrections (DOC), found prisoner James Barber guilty of a disciplinary infraction and ordered punitive segregation.  Barber appealed to the superior court and requested a partial filing fee exemption.  He submitted a financial affidavit and an account statement from his offender trust account (OTA).[2]  He stated that he had over $30,000 in debt, including

---

[1]    AS 09.19.010 provides that prisoners must pay a full court filing fee before commencing litigation against the State.  But the statute allows a court to exempt part of the filing fee if the prisoner demonstrates exceptional circumstances.  The statute provides that at a minimum, the reduced fee shall be "equal to 20 percent of the larger of the average monthly deposits made to the prisoner's account . . . or the average balance in that account [for the six-month period preceding the application for a reduced fee], not to exceed the amount of the full filing fee required under applicable court rules."

[2]    *See* AS 09.19.010 (requiring prisoner to submit financial affidavit and copy of prisoner's account statement when applying for filing fee exemption).  Prisoners have two types of accounts — a normal account to which prisoners have discretionary access and a forced savings account.  *See* 22 Alaska Administrative Code (AAC) 05.105 (2012) (providing that DOC will maintain prisoner fund accounts); AS 33.30.201(d) (providing that prisoner wages not subject to certain deductions and disbursements "must be retained by [DOC] for the primary purpose of being available to the prisoner at the time of release").  In this opinion we refer to the normal account as OTA.  *See* DOC Policies

(continued...)

$2,000 in past-due child support, and $50 monthly child support payments. He also stated that he had $1,750 in assets, including two vehicles and computer equipment. His OTA statement showed a January 2011 starting balance of $583.69 and a May 2011 ending balance of $1.11. DOC did not contest Barber's description of his financial condition. The superior court granted a partial exemption, reducing the filing fee to $33.86 to be paid within 30 days.[3]

Barber attempted to appeal the filing fee order to this court, arguing that he could not pay the reduced fee. We treated the putative appeal as a petition for review.

While that petition was pending, Barber failed to pay the superior court filing fee within the 30-day period; the superior court sent him notice that his appeal would be dismissed if he did not pay within approximately two weeks. Barber asked the superior court to stay the dismissal, asserting that he was unable to pay the filing fee. DOC did not oppose the stay, but it requested that the superior court place a hold on Barber's OTA "so that in the event he receives any deposits to his account during the pendency of this appeal the fee will be paid." The superior court stayed the dismissal of Barber's appeal and placed a $33.86 hold on Barber's OTA. Barber then objected to the hold, arguing that it was not permitted by statute and that the superior court should take no action until we resolved his petition for review.

DOC informed us that the superior court had placed a hold on Barber's OTA for payment of the reduced filing fee, and argued that this mooted Barber's

---

[2]    (...continued)
& Procedures No. 302.12 (defining offender trust account). The court of appeals has held that "prisoner's account" in AS 09.19.010 means the normal account. *Baker v. State*, 158 P.3d 836, 838, 845 (Alaska App. 2007). Neither party suggests we construe it otherwise.

[3]    We are unable to determine how the superior court calculated the reduced filing fee, but this is immaterial to the constitutional issues raised by Barber.

challenge to the reduced filing fee. Barber amended his petition for review to challenge the hold. We denied the petition for review.

But the superior court then lifted the hold on Barber's OTA, explaining that the "hold was placed on Appellant Barber's OTA account during the pendency of his petition for review." The superior court gave Barber 30 additional days to pay the $33.86 filing fee. Barber did not pay, and the superior court dismissed his appeal in November 2011.

## B.     Second Disciplinary Action And Appeals

In September 2011 DOC found Barber guilty of new disciplinary violations and ordered punitive segregation. Barber filed a new administrative appeal to the superior court.

Barber requested a partial filing fee exemption. Barber stated in his financial affidavit that he did not have a positive balance in his OTA, that he had no assets, and that he had no source of income. He indicated that he owed $3,000 in back child support and owed $262 monthly in ongoing child support payments. DOC did not contest Barber's description of his financial condition. The record contains an OTA statement from January through June 2011 showing a starting balance of $583.69 and an ending balance of $0.11. The record also contains an OTA statement from April through October 2011, showing a negative $7.14 starting balance and a negative $8.89 ending balance. It is not clear from the record which OTA statement was before the superior court, although the latter is consistent with Barber's financial affidavit. The superior court set the filing fee at $33.86, due in 30 days.[4]

---

[4]     As with the first appeal, we are unable to determine how the superior court calculated the reduced filing fee, but this is immaterial to the constitutional issues raised by Barber.

Barber did not pay the filing fee by the deadline and the superior court notified him it would dismiss his appeal if he did not pay within 15 days. Barber did not pay, and his appeal was dismissed.

Barber appealed to this court, arguing that the prisoner litigation filing fee statute required a filing fee in excess of his means and thereby unconstitutionally deprived him of an appeal. We sua sponte revived Barber's earlier petition for review and made it part of this appeal. We requested amicus briefing from the Alaska Association of Criminal Defense Lawyers.

## III. STANDARD OF REVIEW

"The interpretation of a statute is a question of law to which we apply our independent judgment, interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[5] "Whether a statute violates the Alaska Constitution is a question of law, which we review de novo, adopting the rule of law that is most persuasive in light of precedent, policy, and reason."[6]

## IV. DISCUSSION

### A. Overview

Barber twice was denied the opportunity to appeal DOC disciplinary action because he failed to pay superior court filing fees. The prisoner litigation filing fee statute, AS 09.19.010, provides that to litigate against the state, prisoners must pay full

---

[5]     *Cutler v. Kodiak Island Borough*, 290 P.3d 415, 417 (Alaska 2012) (quoting *Henrichs v. Chugach Alaska Corp.*, 260 P.3d 1036, 1040 (Alaska 2011)).

[6]     *Sands ex rel. Sands v. Green*, 156 P.3d 1130, 1132 (Alaska 2007) (citing *Anderson v. State*, 78 P.3d 710, 713 (Alaska 2003)).

filing fees or qualify for a partial exemption.[7]   Under the exemption, an indigent prisoner's minimum filing fee is "20 percent of the larger of the average monthly deposits made to the prisoner's account . . . or the average balance in that account" over the six months preceding the litigation.[8]  The reduced fee is due within 30 days unless the superior court grants an extension.[9]  If the prisoner does not pay on time, "the court may not accept any filing in the case or appeal."[10]

Barber asserts that he entered prison with over $500 in his OTA, but it was depleted over the months preceding his appeals to the superior court.  Because AS 09.19.010 requires the court to look to a prisoner's average OTA balance or deposits over the six months preceding litigation, Barber was required to pay two $33.86 filing fees, even though each fee exceeded his actual OTA balance at the time of filing.  Barber asserts that he could not pay the filing fees and therefore was prevented from appealing the disciplinary actions.  Barber argues the statute deprived him of access to the courts in violation of the due process and equal protection guarantees of both the Alaska and United States Constitutions.

Amicus curiae Alaska Association of Criminal Defense Lawyers (Amicus) supports Barber.  Amicus argues that unless we hold the superior court has authority to waive filing fees despite AS 09.19.010, the statute is unconstitutional as applied to Barber in the two superior court appeals.

DOC argues that the superior court has means to avoid unconstitutionally denying court access.  DOC first asserts that the superior court can accommodate

---

[7]     AS 09.19.010(a).

[8]     AS 09.19.010(d).

[9]     AS 09.19.010(e).

[10]     *Id.*

prisoners like Barber by, for example: (1) extending the time to pay a filing fee; (2) allowing installment payments; or (3) directing that the prisoner take a job, request access to a forced savings account, or apply for a permanent fund dividend.  DOC then suggests that if these accommodations are not adequate, when calculating a reduced filing fee the superior court should not include OTA funds allocated to nondiscretionary expenses such as civil judgments, utilities, or child support; in essence, that "prisoner's account" in AS 09.19.010 should be construed to mean only OTA funds to which the prisoner has discretionary access.  DOC requests a remand to determine whether Barber can, with accommodation, pay the filing fees.

**B.     As Applied To Barber, AS 09.19.010 Violated The Alaska Constitution's Due Process Provision.[11]**

Barber argues that as applied to his two superior court appeals, AS 09.19.010 deprived him of state constitutional rights of access to the courts.  Amicus agrees with Barber and specifically argues that AS 09.19.010 violates article I, sections 6[12] and 7[13] of the Alaska Constitution.  DOC agrees AS 09.19.010 has the potential to unconstitutionally bar a prisoner's access to the courts, but, despite having waived a superior court challenge to Barber's stated financial condition, does not concede that the facts adequately demonstrate Barber could not pay the filing fee.

_____

[11]     Because we conclude that Barber was denied court access in violation of the Alaska Constitution's due process provision, we do not need to address whether that denial also violated the Alaska Constitution's equal protection provision or the United States Constitution.

[12]     Alaska Const. art. I, § 6 provides:  "The right of the people peaceably to assemble, and to petition the government shall never be abridged."

[13]     Alaska Const. art. I, § 7 provides:  "No person shall be deprived of life, liberty, or property, without due process of law.  The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed."

We accept Barber's superior court financial statements and affidavits as true in light of DOC's failure to contest them in the superior court. Therefore, Barber's circumstances present a situation anticipated but unresolved in Alaska: "[C]ases may potentially arise under [AS 09.19.010] in which prisoners are required to pay minimum fees that are completely beyond their reach."[14] Although we recently noted that "[t]he superior court cannot deny an indigent prisoner's access to the court based on the prisoner's inability to pay,"[15] we have not addressed AS 09.19.010's constitutionality as applied to prisoners who cannot pay the mandatory minimum filing fee.[16]

We have recognized that prisoners have a constitutional right to access the court system[17] and have recited the proposition that "an inmate's right of unfettered access to the courts is as fundamental a right as any other he may hold. All other rights . . . are illusory without it."[18] But we also have explained that the right is "not

---

[14] *George v. State*, 944 P.2d 1181, 1190 (Alaska App. 1997).

[15] *Johnson v. State, Dep't of Corr.*, Mem. Op. & J. No. 1442, 2012 WL 5830213, at *1 (Alaska, Nov. 14, 2012).

[16] We have examined the constitutionality of AS 09.19.010 only on other theories. *See Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 274-79 (Alaska 2001) (holding AS 09.19.010 facially does not violate equal protection because of disparate treatment of indigent prisoners and indigent non-prisoners, statute was not adopted for an unconstitutional purpose, and statute facially does not unconstitutionally impair access to court merely by requiring a minimum filing fee); *see also George*, 944 P.2d at 1183-91 (holding AS 09.19.010 does not violate due process for vagueness, lack of express provision for hearings, or requiring certain statements, and statute does not violate equal protection as between indigent prisoners and indigent non-prisoners).

[17] *See Mathis v. Sauser*, 942 P.2d 1117, 1120-21 (Alaska 1997).

[18] *Id.* at 1120 (quoting *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir. 1973)) (omission in original).

absolute."[19] In discerning the contours of court access rights, we have looked to diverse constitutional analyses. We have analyzed prisoner court access through a sliding-scale analysis "conceptually similar [to] . . . equal protection and due process"[20] and once expressly through equal protection.[21] In analyzing court access for non-prisoner civil litigants, we have followed a procedural due process approach.[22] These diverse approaches accord with the unique nature of cases involving financial barriers to access to the courts,[23] which inherently involve both equal protection and due process concerns.[24]

---

[19]  *Id.* at 1121.

[20]  *Id.* at 1121 & n.8 (explaining that legitimate penal interest must justify impairments on prisoner access to courts; the more onerous the impairment, the more compelling must be the administrative justification); *see also Brandon*, 28 P.3d at 277 ("[T]he more onerous the burden on access, the higher the scrutiny." (citing *Mathis*, 942 P.2d at 1121)).

[21]  *Brandon*, 28 P.3d at 275-76 (rejecting equal protection claim that prisoner filing-fee statute disparately treats indigent prisoners and indigent non-prisoners, and explaining that because those groups are not similarly situated the filing-fee statute "does not unconstitutionally impinge upon [the prisoner's] right of access to the courts" (quoting *Tucker v. Branker*, 142 F.3d 1294, 1298 (D.C. Cir. 1998))).

[22]  *See Varilek v. City of Houston*, 104 P.3d 849, 853-55 (Alaska 2004) (citing *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1111 (Alaska 2002)) (holding non-waivable filing fee would violate procedural due process if indigent litigant were denied access to the courts); *see also State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 405 (Alaska 2007) ("Our cases have recognized that the due process clause of the Alaska Constitution guarantees the right of access to Alaska's courts.").

[23]  *See M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996) (explaining cases concerning right of access to appeal "cannot be resolved by resort to easy slogans or pigeonhole analysis" (quoting *Bearden v. Georgia*, 461 U.S. 660, 666 (1983))).

[24]  *Id.* ("The equal protection concern relates to the legitimacy of fencing out (continued...)

Because Barber argues that he was wholly deprived of judicial review of DOC's disciplinary decisions, we analyze the claimed denial of his right of access to court as an issue of procedural due process.[25]  To determine what process is due, we balance the following:

> (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.[26]

We therefore turn first to the right Barber seeks to vindicate.  Prisoners have a right to "adequate, effective, and meaningful" court access.[27]  This right is necessarily tied to the underlying claim that a prisoner seeks to bring in court:  The purpose of the right to court access is ensuring adequate remedies for infringements of separate legal

---

[24]    (...continued) would-be appellants based solely on their inability to pay core costs . . . . The due process concern homes in on the essential fairness of the state-ordered proceedings anterior to adverse state action.") (citations omitted).

[25]    *See Varilek*, 104 P.3d at 853 (analyzing whether non-waivable administrative filing fee violated procedural due process).

[26]    *Id.* (quoting *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1111 (Alaska 2002)) (internal quotation marks omitted).  In *Mathis v. Sauser*, 942 P.2d 1117, 1120-21 (Alaska 1997), we used a sliding-scale analysis for prisoner court access; the inquiries in that analysis are consistent with our procedural due process analysis.

[27]    *Mathis*, 942 P.2d at 1121 n.6 (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)).

rights.[28] Thus we look not only to Barber's right to access the courts generally, but also to the underlying claims for which Barber sought access.

Barber sought judicial review of two DOC disciplinary actions ordering punitive segregation. Punitive segregation is a liberty deprivation sufficient to trigger the Alaska Constitution's due process guarantee,[29] and Barber alleged in his superior court appeals that the DOC disciplinary proceedings violated his constitutional rights to due process. Although due process does not require a right to an automatic appeal from a DOC disciplinary action,[30] "[i]f fundamental constitutional rights are alleged to be abridged in disciplinary proceedings, it would be the duty of the court to inquire into the allegations."[31] Alaska Statute 33.30.295 affirms this principle by allowing prisoners to obtain superior court review if they allege violations of fundamental constitutional rights in the disciplinary process.[32] Barber's interest, therefore, is in accessing the courts for appellate review of alleged constitutional infirmities in the DOC disciplinary

---

[28] *See id.* at 1120 n.5 (noting the right of access preserves all rights and that "rights without remedies are no rights at all") (citations omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002) ("[T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong.").

[29] *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1234 (Alaska 2003).

[30] *McGinnis v. Stevens*, 543 P.2d 1221, 1236 (Alaska 1975).

[31] *Id.* at n.45 (citations omitted).

[32] AS 33.30.295(a) provides: "A prisoner may obtain judicial review by the superior court of a final disciplinary decision by the department only if the prisoner alleges specific facts establishing a violation of the prisoner's fundamental constitutional rights that prejudiced the prisoner's right to a fair adjudication."

proceedings. This interest is recognized in both our precedent[33] and statute.[34]

We have stated that a prisoner's right of access to the courts is "not absolute,"[35] but nonetheless is "as fundamental a right as any other he may hold."[36] But in claims brought by non-prisoner civil litigants we have stated that the court access right is not "fundamental," but "important."[37] That language originates from our review of court access claims in which a party sought to litigate a property interest.[38] But Barber raises more than a property interest: In challenging punitive segregation he raises a liberty interest, and in challenging the disciplinary proceedings he raises violations of his constitutional due process rights. And the right of court access often is of higher importance to prisoners because they may have no avenues outside the judicial system to seek redress. As the United States Supreme Court has explained: "Because a prisoner ordinarily is divested of the privilege to vote, the right to file a court action might be said to be [the prisoner's] remaining most fundamental political right, because [it is]

---

[33]     *McGinnis*, 543 P.2d at 1236 n.45.

[34]     AS 33.30.295.

[35]     *Mathis*, 942 P.2d at 1121.

[36]     *Id.* at 1120 (quoting *Adams v. Carlson*, 488 F.2d 619, 630 (7th Circ. 1973)).

[37]     *See State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 405 (Alaska 2007) (citing *Patrick v. Lynden Transp., Inc.*, 765 P.2d 1375, 1379 (Alaska 1988)).

[38]     *Patrick*, 765 P.2d at 1376, 1379 n.3 (explaining that claimant sought to bring breach of contract claim and rejecting assertion that claim implicated fundamental right to travel); *see also Varilek v. City of Houston*, 104 P.3d 849, 854 (Alaska 2004) (noting claimant contested land use ordinance impacting claimant's business and explaining that "access to the courts to litigate a *property interest* is an 'important right' " (emphasis added) (citing *Patrick*, 765 P.2d at 1379)); *but see Native Vill. of Nunapitchuk*, 156 P.3d at 405 (noting, in context of public interest litigation, that right of access is "important").

preservative of all rights."[39]  This is true of Barber.  We conclude that Barber has a fundamental right to court access to challenge a DOC disciplinary proceeding affecting his liberty interest on the ground that DOC violated his constitutional due process rights.

We next turn to the second factor in our due process analysis:  "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards."[40]  Because Barber was deprived of his right to access the court, the additional procedure sought and the interest deprived appear to be one and the same.  For that reason it is again logical to look not only to the deprivation of access, but also to the underlying claim:  Barber challenges DOC disciplinary proceedings affecting his liberty interest on the ground that DOC violated his constitutional due process rights.  We previously have recognized the limited nature of a prisoner's procedural rights in DOC disciplinary hearings, concluding that prisoners accused of infractions are "not entitled to the full panoply of rights due an accused in a criminal proceeding."[41]  And we previously have expressed concern about the fairness of the DOC disciplinary process itself.[42]  In short, we are now convinced that there is a significant risk of erroneous deprivation in DOC disciplinary proceedings.  Absent judicial review, there is no external check on the constitutionality of DOC

---

**39**   *See McCarthy v. Madigan*, 503 U.S. 140, 153 (1992) (internal quotation marks and citation omitted).

**40**   *Varilek*, 104 P.3d at 853.

**41**   *McGinnis v. Stevens*, 543 P.2d 1221, 1226 (Alaska 1975); *accord Abruska v. State, Dep't of Corr.*, 902 P.2d 319, 321 (Alaska 1995).

**42**   *McGinnis*, 543 P.2d at 1228 n.16 (noting possibility that DOC disciplinary panels consisting of DOC personnel could produce a biasing effect against prisoners: "[u]nless the need for impartiality is constantly stressed, committee members may simply support other correctional officers").

disciplinary proceedings, and the consequences of an erroneous deprivation of a liberty interest from an unconstitutional DOC disciplinary proceeding are of great import. The risk of erroneous deprivation therefore is high, as is the value of review.[43]

Finally, we turn to the state's interest in AS 09.19.010 — discouraging frivolous litigation and requiring prisoners to pay filing fees according to their financial ability.[44] We have described the interest in reducing frivolous prisoner litigation as legitimate and have explained that requiring filing fees is a constitutionally acceptable means to further that interest.[45] We have stated that "[t]he provisions of AS 09.19.010 require the prisoner contemplating certain forms of litigation against the state to consider whether it is worth the cost, just as other litigants must."[46] But we also have stated that AS 09.19.010 only requires filing fees based on a prisoner's ability to pay: "Extensions of time may be granted in order to give a prisoner the opportunity to pay. And if the prisoner's account balance is low enough, he or she may be required to pay very little, or nothing."[47] Barber's circumstances expose the gap between these two statements.

Because the minimum filing fee under AS 09.19.010 is calculated as 20% of the average balance or deposits in a prisoner's OTA over the six months preceding litigation, prisoners whose balances deplete over those six months to less than 20% of

---

[43] *See id.* at 1236 n.45 ("[I]f fundamental constitutional rights are alleged to be abridged in disciplinary proceedings, it would be the duty of the court to inquire into the allegations."); *K & L Distrib., Inc. v. Murkowski*, 486 P.2d 351, 357 (Alaska 1971) ("It is the constitutionally vested duty of this court to assure that administrative action complies with the laws of Alaska.").

[44] *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 278 (Alaska 2001).

[45] *Id.* at 277-79.

[46] *Id.* at 279.

[47] *Id.* at 278.

the average balance or deposits are required to post a filing fee in excess of their account balance.[48] And for prisoners without assets but with substantial garnishments and no income, like Barber, extensions of time provide interminable delay but no access.[49] Although the state may have a legitimate interest in reducing frivolous prisoner litigation, due process cannot allow that interest to be furthered by barring an individual prisoner's court access because of an actual inability to pay. As applied to prisoners in Barber's circumstances, AS 09.19.010 denies adequate procedural due process.

### C. Suggested Accommodations And Interpretations Do Not Avoid AS 09.19.010's Unconstitutionality As Applied To Barber.

DOC argues that we can avoid Barber's constitutional claims by declaring that the superior court has discretion to accommodate prisoners faced with filing fees beyond their means. DOC specifically asserts that the superior court can: (1) extend the time for payment; (2) allow for payment in installments; or (3) direct the prisoner to apply for a prison job, seek permission to access funds in a forced savings account, or apply for a permanent fund dividend. DOC asserts that these accommodations may be used alongside a stay of the disciplinary action.

The only accommodation AS 09.19.010 expressly provides the court is the ability to grant an extension of time for paying the filing fee.[50] It is logical to conclude that this also encompasses the discretion to allow installment payments. But extensions and installment payments provide no relief for prisoners with no reasonably foreseeable

---

[48] *See* AS 09.19.010(d).

[49] *See* AS 09.19.010(e) ("If timely payment is not made, the court may not accept any filing in the case or appeal.").

[50] AS 09.19.010(e) ("[T]he case or appeal will not be accepted for filing if payment of a filing fee is not made within 30 days . . . unless the time for payment is extended by the court.").

income to make payment.[51]  Delay does not provide constitutionally adequate court access to prisoners without funds or income.  Nonetheless, extensions or installments may be relevant considerations on remand — though Barber earlier informed the superior court that he had no source of income, Barber states that he now has a job at the prison.

DOC's other suggested accommodations — directing a prisoner to apply for a job, seek permission to access funds in the prisoner's forced savings account, or apply for a permanent fund dividend — seem unlikely to impact a determination whether a prisoner has funds to pay a filing fee.  As to directing a prisoner to seek employment, a prisoner's employment status is a valid consideration in determining whether to grant an extension or allow for installment payments, but it may be problematic to *order* a prisoner to seek employment.  Because Barber states that he now holds a job at the prison, we do not presently need to rule on the appropriateness of this suggested accommodation.  As to directing a prisoner to seek access to a forced savings account, DOC policy prohibits using those funds to calculate or pay filing fees.[52]  And as to directing prisoners to apply for permanent fund dividends, many prisoners have no right

---

[51]    *See id*. ("If timely payment is not made, *the court may not accept any filing* in the case or appeal.") (emphasis added).

[52]    DOC Policies & Procedures No. 304.01(VII)(B)(2) ("Mandatory savings may not be used to either calculate or pay court-ordered filing fees as determined by AS 09.19.010."); *see also* AS 33.30.201(d) (providing certain funds "must be retained by [DOC] for the primary purpose of being available to the prisoner at the time of release," but noting DOC may "permit the prisoner to draw on a portion of that money for other purposes that [DOC] considers appropriate"); *Baker v. State*, 158 P.3d 836, 844-45 (Alaska App. 2007) (holding forced savings balance could not be used to calculate minimum filing fees, but noting that does not bar DOC from authorizing filing fee payment from forced savings).

to a permanent fund dividend.[53]  We are not persuaded that the tenuous possibility of such accommodations should prevent us from ruling on Barber's constitutional right to access the courts.

DOC additionally argues that we should construe AS 09.19.010 to require courts to ignore funds in a prisoner's OTA that are allocated to non-discretionary expenditures or garnishments.  That is, DOC suggests that in looking at the OTA balance or deposits to calculate a reduced filing fee under AS 09.19.010(d), courts should not count funds that were allocated to non-discretionary purchases.  We find no support for this construction.

In *Baker v. State*[54] the court of appeals ruled that when calculating "the average balance in [the prisoner's] account," as provided in AS 09.19.010, the court should not look to funds in that inmate's separate forced savings account,[55] but should look only to funds in the prisoner's normal account, "*i.e.*, the money that is available, without limitation, to the prisoner for discretionary spending."[56]  The court of appeals reasoned that the purpose of AS 09.19.010 — reducing "recreational" litigation by forcing prisoners to choose between spending money on litigation or on discretionary purchases — is not furthered by allowing filing fees to come from a forced savings

---

[53]     *See* AS 43.23.005(d)(2) (providing prisoners not eligible for permanent fund dividend if incarcerated for a felony or for a misdemeanor with a prior felony or two or more prior misdemeanors).

[54]     158 P.3d 836 (Alaska App. 2007).

[55]     *Id.* at 841-45.

[56]     *Id.* at 842.

account.[57]  Because the prisoner does not have discretionary access to the money in a forced savings account, "there is no immediate 'trade-off' when money is taken out of [that] account to pay a filing fee."[58]  Thus in calculating the filing fee the court of appeals ignored money in the prisoner's forced savings account as well as money that was temporarily deposited to the prisoner's normal account and then transferred to forced savings.[59]

DOC argues that we should adopt and extend *Baker* to non-discretionary OTA deductions such as child support.  DOC reasons that where these mandatory deductions "unconstitutionally erect an insurmountable barrier to an inmate accessing the courts," we have the authority to limit the operation of AS 09.19.010.

We generally seek to "narrowly construe statutes in order to avoid constitutional infirmity where that can be done without doing violence to the legislature's intent."[60]  But we are "reluctan[t] to step into the shoes of the legislature and redraft legislation."[61]  In *Baker* the court of appeals correctly employed tools of statutory construction to address the fact that the legislature created forced savings accounts *after*

---

[57]     *Id.* at 843.

[58]     *Id.*

[59]     *Id.* at 845.

[60]     *State v. Blank*, 90 P.3d 156, 162 (Alaska 2004) (citation omitted); *see also Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 196-97 (Alaska 2007) (applying narrow construction to part of English-only law where supported by text and ballot initiative materials).

[61]     *Alaskans for a Common Language, Inc.*, 170 P.3d at 196 (citing *Gottschalk v. State*, 575 P.2d 289, 296 (Alaska 1978)); *see also State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597-98 (Alaska 2011) (declining to expand statute beyond plain language).

enacting AS 09.19.010 and thus would not have considered forced savings accounts in drafting AS 09.19.010.[62]  But the statute enabling the state to levy funds from an inmate's account to pay child support, restitution, civil judgments, violent crimes compensation, and other judgments[63] was enacted in the same legislative act as AS 09.19.010.[64]  The legislature could not have intended in a single act to permit automatic deductions from an inmate's account[65] but presume that the deposits or average balance in that account[66] would not reflect those transactions.  To adopt DOC's suggestion would go beyond merely applying a narrowing construction and into the impermissible territory of redrafting AS 09.19.010.

Next DOC mentions that "this court has the common law and inherent authority to limit the operation of AS 09.19.010 in a manner that still furthers the legislature's purpose," and cites several cases discussing a common law authority to waive filing fees.[67]  Although DOC does not appear to expressly argue it, Amicus

---

[62]   *Baker*, 158 P.3d at 841.

[63]   AS 09.38.030(f).

[64]   *See* Ch. 79, §§ 1, 4, SLA 1995.

[65]   AS 09.38.030(f).

[66]   AS 09.19.010(d).

[67]   *See Brown v. Pitchess*, 112 Cal. Rptr. 350, 355 (Cal. App. 1974) (vacated 13 Cal.3d 518 (1975) ("[M]andatory statutory language requiring bonds has not been interpreted as a limitation on the court's inherent power to grant relief *in forma pauperis* in a proper case."); *Campbell v. Criterion Grp.*, 605 N.E.2d 150, 155-56 (Ind. 1992) (discussing common law authority to permit *in forma pauperis* appeals absent statute to contrary); *Melder v. Carreiro*, 541 A.2d 1293, 1294 (Me. 1988) (holding district court had inherent authority to waive fee on appeal), *superseded on other grounds*, *Levesque v. Levesque*, 697 A.2d 1309 (Me. 1997);  *Casper v. Huber*, 456 P.2d 436, 437 (Nev.
(continued...)

interprets DOC's citation as advocating a holding that Alaska courts have an inherent common law authority to *waive* a mandatory prisoner litigation filing fee. Amicus then argues that if we do not hold an inherent authority to waive filing fee exists, then AS 09.19.010 is unconstitutional as applied to Barber.

Although we may declare the common law *where* there is no governing statute or a constitutional provision, "[w]hen the courts exercise their common-law authority, the guiding principle is that they should not exercise this authority in disregard of existing constitutional and statutory provisions."[68] Prior to the enactment of AS 09.19.010, prisoners could seek a total filing fee waiver.[69] The court of appeals has explained correctly that AS 09.19.010 "limits the courts' authority to waive filing fees in lawsuits brought by prisoners against the state government."[70] Alaska Statute 09.19.010 expressly provides that "[i]f timely payment is not made, the court may not accept any filing in the case or appeal." Such mandatory language precludes us from ruling that Alaska courts have a common law authority to waive prisoner litigation filing fees in their entirety.

---

[67]     (...continued)
1969) (waiving filing fee on appeal although no statutory authority to do so); *Silvestro v. Almonte*, 484 A.2d 900, 902-03 (R.I. 1984) (inherent authority to waive costs when enforcing substantial right and person filing "absolutely unable" to provide fee); *O'Connor v. Matzdorff*, 458 P.2d 154, 160 (Wash. 1969) ("[C]ourts have found within their powers an inherent power to waive the prepayment of court fees, where a suitor or defendant has shown that he is impoverished, regardless of statutory authority.").

[68]     *See Hosier v. State*, 957 P.2d 1360, 1364-65 (Alaska App. 1998).

[69]     *See* Alaska Admin. R. 9(f)(1) ("No filing, certifying, or copying fees will be charged to a person determined to be indigent under Administrative Rule 10."); Alaska Admin. R. 10 (establishing procedures for determining indigency for filing fee exemption).

[70]     *See George v. State*, 944 P.2d 1181, 1182 (Alaska App. 1997).

**D. On Remand AS 09.19.010 Cannot Be Applied To Unconstitutionally Deny Barber Access To Court.**

We note specific instructions for the superior court on remand. The superior court shall recalculate Barber's mandatory filing fees under AS 09.19.010 as of the date of remand. If the mandatory filing fees exceed Barber's available funds and cannot be paid in a reasonable time through extensions or installment payments, the superior court shall allow Barber's litigation to proceed while furthering, to the best extent possible, the legislature's goal of requiring prisoners to bear a portion of the costs of litigation and to "consider whether [litigating] is worth the cost, just as other litigants must."[71] For example, the superior court may allow the litigation to proceed while placing a hold on Barber's OTA to secure the filing fees if and when funds become available.[72]

---

[71] *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 279 (Alaska 2001).

[72] Barber argued that a hold is not allowable when the superior court temporarily placed one on his account during the pendency of his petition for review. He asserted that the only legal basis for a hold is under AS 09.38.030(f), which provides that "[a]ll money in an incarcerated person's account at a correctional facility is available for disbursement under a notice of levy . . . to satisfy [*inter alia*] judgments entered against a prisoner in litigation against the state." He reasoned that because there was no judgment against him, AS 09.38.030(f) would not apply and a hold would therefore be untenable. We disagree that AS 09.38.030 provides the only basis for a hold. Should a prisoner seek to litigate against the state but have inadequate funds to pay a mandatory filing fee under AS 09.19.010, a hold could allow the superior court to avoid unconstitutionally depriving the prisoner access to court while furthering the legislature's purpose of requiring prisoners to "consider whether [litigating] is worth the cost, just as other litigants must." *See Brandon*, 28 P.3d at 279. Such an accommodation therefore aligns with our duties to give effect to the legislature's intent and to protect the Alaska Constitution. *Cf. Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 196 n.54 (Alaska 2007) ("Where a narrow construction of a statute will avoid constitutional infirmity without doing violence to the manifest legislative intent, we will interpret the

(continued...)

## V.    CONCLUSION

For the reasons stated above, we REVERSE the superior court's dismissals of Barber's disciplinary appeals and REMAND for recalculation of the statutory filing fees and further proceedings.

---

[72]    (...continued)
statute accordingly." (quoting *Bonjour v. Bonjour*, 592 P.2d 1233, 1237 (Alaska 1979))).