BOLGER, Chief Justice.
I. INTRODUCTION
A divorced mother had sole legal and physical custody of her two daughters. Their father sought a protective order against the mother and a modification of custody after she repeatedly hit the older daughter with a belt. The superior court found that the mother's actions did not trigger the presumption against custody under AS 25.24.150(g). It ordered that she retain legal and physical custody, subject only to a limited protective order, and that the father have restricted visitation. The father appeals.
We conclude that it was an abuse of discretion for the superior court to exclude the testimony of a psychologist who diagnosed the child with PTSD. We thus vacate the custody decision and remand for a new analysis of the children's best interests in light of the psychologist's testimony.
II. FACTS AND PROCEEDINGS
A. Background
John and Andrea E. married in 2004.[1] They have two daughters: one born in 2004, and one born in 2007. John and Andrea divorced in 2011 and shared legal and physical custody of their children. That arrangement was largely unchanged until 2015, when the superior court granted primary physical custody and sole legal custody of the children to Andrea and allowed John only supervised visitation. The court made this modification after finding that John had assaulted Andrea at least three times, triggering a rebuttable presumption that he not be awarded "sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."[2] The court noted that John could overcome this domestic violence presumption by completing a domestic violence program approved by the Department of Corrections, which he did in late 2016.
B. Andrea's 2017 Assault Of Her Daughter
On June 30, 2017, Andrea punished her older daughter, who was then twelve, by hitting her repeatedly with a belt. Andrea and the child gave different accounts of the incident at trial.
1. Andrea's account
According to Andrea, her daughter had been constantly misbehaving leading up to the June 30 incident, and had "been sneaking out of the house for the past year." Andrea said she had unsuccessfully tried to control this behavior without corporal punishment, *652 but eventually warned her daughter that if she continued to sneak out she would "get spanked."
Andrea said that on June 30 she saw a Snapchat video showing her daughter walking down a busy street with friends "at three o'clock in the morning," and a second video showing her smoking. Andrea then confronted her daughter and demanded the passcode for her phone. When the child refused, Andrea decided to "spank" or "whip[ ]" her with a belt. Andrea claims that she then grabbed her daughter, turned her around, and started whipping her rear end with a plain leather belt. She said that soon after she started, her daughter gave her the passcode to her phone.
Andrea said that she then stopped hitting her daughter and began to review the contents of her cell phone, where she saw sexual content, including sexual communications. Andrea asked for the friend's phone number and was refused; angered by this, she then grabbed the belt and began hitting her daughter again. Andrea said that she was hitting her daughter's legs, but that the child grabbed the belt and tried to kick her. Andrea said that while wrestling with her over the belt, she accidentally hit her daughter in the face, giving her a bloody nose. Andrea said that her fiancé then restrained the child, the fight ended, and she told her daughter to take a shower to clean up. According to Andrea, the whole incident took place within a 30-minute period.
2. The child's account
The child's account differed from Andrea's in several ways. She agreed that the incident began when Andrea saw videos of her "hanging out [with a friend] early in the morning." She said that Andrea told her to sit on a "game chair" and "started hitting [her] with [a] belt." The child testified that instead of being plain leather, the belt was studded with "metal stars." She also said that Andrea hit her "a few times ... in the face" in addition to her legs and arms. She said that when she tried to shield her face with her hands, Andrea pushed her hands aside, and that Andrea's fiancé assisted throughout much of the incident by restraining her while Andrea continued the beating. She also testified that Andrea put her hands around her neck. The child said that at some point Andrea "threw [a cup of juice] all over" her, then told her to take a shower. The child stated that Andrea continued beating her while spraying her with the shower handset.
C. Proceedings Following The Assault
The morning after the assault, the child left the house again without Andrea's permission; she was picked up by John's wife, Kimberly, and resided with John and Kimberly until the end of the proceedings at issue in this appeal.
John took the child to the hospital the morning after the assault, and he obtained an ex parte domestic violence protective order on behalf of both his daughters. Andrea moved to dissolve the order, and on July 5, 2017, a magistrate judge granted her motion with respect to the younger daughter, but not the older one. That same day John filed a motion to modify custody, requesting sole legal and primary physical custody of both children.
The superior court held a status hearing on September 21 for both the domestic violence case and the motion to modify custody. Among other things, the parties argued over the fact that John had taken their older daughter to see a psychologist despite the fact that Andrea retained sole legal custody over her. The court scheduled an evidentiary hearing for October 4 and 5.
Various witnesses testified at the evidentiary hearing, including Andrea and the older daughter, who each described their version of the assault. [summarized above in Part II.B] Andrea also sought to justify the incident, explaining that her mother had practiced even harsher forms of punishment when she was a child. Noting that other punishments had failed to correct her daughter's behavior, Andrea explained that she did not regret her decision and would make the same one again if confronted with the same circumstances. The older daughter testified at the hearing that she did not want to return to live with Andrea, and that she still had some marks from the assault that had not yet gone away.
*653 John introduced photographs of the child's injuries after the assault and testified that a doctor performed a CAT scan of her nose because it appeared to be broken, but that the test showed it was not. Another witness who saw the child right after the assault testified that her injuries appeared minor at the time, and were not as serious as those in John's photographs.
John also sought to call as a witness the psychologist who had seen his daughter. Andrea objected and the court ruled that it would not allow the psychologist to testify. The court seemed to conclude that John lacked the authority to bring his daughter to the psychologist, because Andrea had sole legal custody, and that he had done so for litigation purposes rather than to secure emergency treatment. In its final custody order, the court explained that it "declined to permit John to take advantage of overstepping his legal and medical authority when he took [his daughter] to a counselor a day before the [September 21] hearing."
At the end of testimony on October 5, the court dissolved the existing ex parte domestic violence order to the extent that it prohibited contact between Andrea and her older daughter, and scheduled supervised visitation between them. On October 13 John filed an expedited motion to suspend this visitation until a therapist had approved its "time, place and manner," arguing that the child was not ready to see Andrea and that "[r]elations between mother and daughter cannot be normalized without therapeutic intervention." The court decided that this motion was moot when it delivered its oral ruling on custody three days later, and denied it in its final custody order.
On October 16 the court held a hearing to decide John's request for a longterm domestic violence protective order and his motion to modify custody. John argued that Andrea's assault of their older daughter resulted in "serious physical injury" because it produced "protracted impairment of health," and so triggered the rebuttable presumption that she should not have custody.[3] He also argued that the assault constituted two or three distinct incidents of domestic violence because Andrea interrupted the beating to look at her daughter's phone and - in the child's account - to tell her to get in the shower. Andrea argued that her use of violence against the child was excusable as reasonable discipline.[4]
D. The Superior Court's Rulings On The Long-Term Domestic Violence Order And Motion To Modify Custody
The superior court delivered an oral ruling at the close of the hearings, and later issued written orders. It issued a long-term domestic violence protective order with only one provision: that Andrea "not threaten to commit or commit acts of domestic violence, stalking, or harassment."
In its custody order the court made the following findings about Andrea's assault of her daughter: that "Andrea hit [the child] with her hands and then several times with the belt on the legs and arms" after she refused to give Andrea the passcode to her cell phone; that once she obtained access to the phone, Andrea "resumed hitting [the child] with the belt"; that the child suffered "facial bruising," but that it was unclear whether this was caused by intentional or accidental contact; and that the younger daughter "was in the same room during most of the confrontation between Andrea and [her sister]."
The court rejected Andrea's argument that her assault was reasonable corporal punishment. But it likewise rejected John's argument that the assault constituted two distinct incidents of domestic violence or that it resulted in "serious physical injury" to the child. The court explained that "the various acts of violence were all part of one excessive disciplinary episode" and that they did not "create a substantial risk of [the child's] death" or cause her to "suffer protracted disfigurement or impairment of health," as *654 was required to find a single incident of domestic violence serious enough to trigger the presumption.[5] The court thus declined to apply the domestic violence presumption in AS 25.24.150(g). It explained that Andrea's single incident of domestic violence was instead "to be considered when weighing the best interest factors of AS 25.24.150(c)." The court found the assault "troubling," but concluded that Andrea's violence "had a more understandable origin than [did] John's repeated behaviors" - presumably referring to John's multiple assaults of Andrea and other disruptive behavior since their divorce.
The court found that Andrea's assault on her older daughter "damaged their relationship at a time when it needed to be strong and trusting," but that John was also causing harm to the child by "manipulating [his] relationship [with her] to get revenge on Andrea." The court ultimately concluded that "Andrea is more able to meet each child's daily emotional and medical needs."
The court found it significant that the "children ha[d] been living with Andrea for a greater period of time in the past two years" than they had with John. The court noted the older daughter "expressed a fear of returning to Andrea's home." But it did not view her expressions of fear as "mature, thought out expressions of a preference to live with one parent rather than the other" but instead "as evidence of her need for help relating with her mother."
The court awarded Andrea sole legal and primary physical custody of the children, and ordered that John have unsupervised visitation with the children for four hours every week. The court recognized that the older daughter "need[ed] time and assistance to restore her relationship with Andrea" and that Andrea needed to develop more appropriate strategies for dealing with her misbehavior. Accordingly the court ordered that Andrea should arrange for counseling for the child and engage in anger management and parenting counseling herself. The court ordered that neither parent should use corporal punishment on the children.
John now appeals the superior court's long-term domestic violence protective order and its 2017 custody order.
III. DISCUSSION
A. The Decision To Exclude The Testimony Of The Older Daughter's Psychologist Was An Abuse Of Discretion.
John had his older daughter examined by a psychologist in September 2017, just before the hearings in this case, and he offered the psychologist's testimony as a hybrid witness at the October 4 hearing.[6] Upon Andrea's objection, the court excluded the evidence, deciding that the report was driven by the litigation and that it was not an emergency counseling session or otherwise authorized by Andrea.[7] It explained in its written order that it "declined to permit John to take advantage of overstepping his legal and medical authority."
John argues that the exclusion of the psychologist's testimony was erroneous. "We review decisions involving the admission of expert testimony for abuse of discretion."[8] "A decision constitutes abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or ... stems from an improper motive.' "[9]
*655 The court's language makes it clear that the exclusion of the testimony was a sanction, intended to punish John for taking the child to see the psychologist without legal authority. The court found that John had violated the earlier custody order granting Andrea sole legal custody by doing so. It explained that its earlier order had been clear that John had no authority to make medical decisions for the children, and that it was not convinced by John's explanation that Andrea had authorized him to arrange counseling for their older daughter months before he brought her to the psychologist. The record supports the superior court's conclusion that John brought his daughter to the psychologist for litigation purposes rather than emergency care. But even though John did not have the legal authority to bring the child to the psychologist, the reality is that the psychologist nevertheless saw her in a clinical setting and developed an opinion relevant to her best interests by doing so.
The court made no apparent inquiry into the potential harm to the fact-finding process that would be caused by precluding the psychologist's testimony. This case was a proceeding to determine the custody and protection of two children. Their best interests were paramount.[10] Having seen her as a patient, the psychologist planned to testify about the older child's mental condition after being beaten. This evidence would certainly have been relevant to the child's best interests. And the superior court recognized this, stating that: "I don't know why I should be precluded from hearing testimony from a person who has spoken with this child and ... presum[ably] has some professional opinion. Why am I precluded from hearing that simply because [John] violated my order in obtaining it?" Nevertheless it chose to exclude her testimony. This exclusion arguably made it harder for the superior court to address the crucial consideration of the child's best interests.
Moreover, the superior court's statement in its final custody order demonstrates that it excluded the psychologist's testimony to punish John for violating its earlier order. As noted above, the court explained in its written order that it had "declined to permit John to take advantage of overstepping his legal and medical authority." And while the court engaged in a lengthy dialogue about whether Andrea had granted John authority to take the child to a therapist, its ultimate conclusion focuses mainly on John's violation of its earlier order, not the psychologist's qualifications or the value of her testimony.
We conclude that the superior court's exclusion of the psychologist's testimony stemmed from an improper motive. A trial court has "the inherent power, as well as the duty, to enforce" custody orders.[11] But the way in which the superior court chose to enforce the order in this case potentially undermined its primary concern. By excluding the psychologist's testimony, the superior court subordinated the children's best interests to its own interest in sanctioning John for his violation of the earlier order.
We thus hold it was an abuse of discretion to punish John by excluding the psychologist's testimony when its inclusion could have served the best interests of his daughter. Because the psychologist's testimony could have affected the superior court's best interests analysis, we vacate the custody decision.[12] We now turn to John's remaining arguments.
B. The Superior Court Did Not Err When It Found That Andrea Did Not Have A History Of Perpetrating Domestic Violence.
"There is a rebuttable presumption that a parent who has a history of perpetrating *656 domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."[13] "A parent has a history of perpetrating domestic violence ... if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence."[14] The superior court did not apply the presumption here because it found that Andrea neither caused a serious physical injury, nor engaged in more than one incident of domestic violence. John challenges both of these findings. After considering the record and the statutory language, we cannot conclude that the superior court erred.
1. Andrea did not cause serious physical injury to the child.
John argues that his older daughter suffered "serious physical injury" during the assault. We review the superior court's factual findings concerning the assault for clear error.[15] Whether these factual findings support a conclusion that the child suffered "serious physical injury" is a question of law that we review de novo.[16] Likewise, the interpretation of the term "serious physical injury" is a question of law to which we apply our independent judgment.[17]
We have previously determined that the term "serious physical injury" in AS 25.24.150(h) (the domestic violence presumption) has the meaning given by the definition of "serious physical injury" in the criminal code.[18] "Serious physical injury" is defined in the criminal code as
(A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or
(B) physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy[.][19 ]
John conceded at trial that Andrea's actions did not create a substantial risk of death, unlawfully terminate a pregnancy, or impair the function of a body member or organ. Thus the question before us is whether the superior court erred in concluding that the child did not suffer "serious and protracted disfigurement" or "protracted impairment of health."
The child sustained marks, scratches, and bruises - including bruises on her face - as a result of the beating. There was evidence to suggest that some of these injuries persisted for six days or more. Moreover, the child testified that she still had some marks on October 4, 2017, months after the assault. But the beating did not break any bones and the child did not sustain any injuries that caused a permanent loss of function or required serious medical intervention.[20]
*657 John also argues that the superior court erred by not concluding that the emotional harm suffered by the child amounted to serious physical injury. John additionally argues that the superior court erred by not concluding that the emotional harm suffered by the child was sufficient to trigger the domestic violence presumption. We have never held that an emotional injury could be considered a serious physical injury for the purposes of AS 25.24.150(h), and John provides no basis for us to do so now.[21] And having reviewed the criminal code definition, which governs the use of the term in the domestic violence presumption,[22] we are not convinced that "serious physical injury" should be expanded to include emotional harm.[23] Therefore, we conclude that the superior court did not err when it concluded that the child did not suffer "serious physical injury."
2. Andrea's assault of her daughter did not constitute two or more distinct incidents of domestic violence.
Under the statute, a parent has a history of perpetrating domestic violence if the superior court finds that he or she "engaged in more than one incident of domestic violence."[24] In this case, the superior court determined that "Andrea's behavior on 30 June 2017 constituted a single episode of domestic violence" and was "one excessive disciplinary episode." John argues that this determination was erroneous and that Andrea engaged in at least two distinct incidents of domestic violence. We review the superior court's factual findings for clear error.[25] But the interpretation of the language "more than one incident of domestic violence" in AS 25.24.150(h) is a question of law to which we apply our independent judgment.[26]
The superior court found that "Andrea hit [her daughter] with her hands and then several times with the belt on the legs and arms," stopped beating her to review the contents of the cell phone, and then "resumed hitting [her] with the belt." These findings are supported by Andrea's testimony and, to a certain degree, the child's.[27] Andrea's testimony that the entire episode lasted approximately 30 minutes was uncontradicted in the record. John argues that by interrupting the beating to look at her daughter's phone, Andrea broke the episode into at least two distinct incidents of domestic violence.[28] The question is thus a legal *658 one: whether this conduct constituted one incident or two incidents of domestic violence.
We have not previously considered the phrase "more than one incident of domestic violence" in detail.[29] Dictionary definitions of "incident" could provide some guidance,[30] but are largely circular and rely on synonyms.[31] Thus to give meaning to "incident" we must consider the purpose behind the domestic violence presumption and the legislature's specific use of the word.[32]
A sponsor of the bill that enacted the domestic violence presumption made comments that are particularly helpful. At one point she referred to "serious bodily injury on a repetitive, perpetual basis."[33] Referring to the conduct that would trigger the presumption, she also noted that "we've always meant for it to be more than an act."[34] And she explained that the "rebuttable presumption specifies that a child will not be placed in ... custody if there are proven incidents of serious bodily injury and/or a proven pattern of domestic violence."[35] And an attorney who was involved in the development of the domestic violence presumption language referred in his testimony to the "control dynamic in abusive relationships" and "the abuser's clear ability in the relationship to do it again and again if necessary to keep control."[36]
The references to a "pattern" of domestic violence; to "repetitive, perpetual" domestic violence; to "perpetuating" domestic violence; and to "do[ing] it again and again ... to maintain control" indicate that the legislature viewed the phrase "more than one incident of domestic violence" as referring to habitual or recurring violence. An episode of excessive corporal punishment lasting 30 minutes does not evince a "pattern" of domestic violence. Thus, although it was arguably broken into two periods of violence, we conclude that the 30-minute episode was a single incident for the purposes of the domestic violence presumption.
Accordingly we hold that it was not error to conclude that Andrea had not triggered the domestic violence presumption by either causing the child serious physical injury or engaging in more than one incident of domestic violence.
C. The Decision To Restrict John's Visitation Was Not Adequately Explained.
John argues that the superior court erred by limiting his visitation with the children to only four unsupervised hours per week. We review the superior court's visitation decisions for abuse of discretion.[37]
*659 In several cases, though, we have required an explanation when the superior court severely restricts a parent's visitation.[38] John had limited visitation while he was completing his domestic violence program; under the 2015 order, John was only allowed supervised visitation with the children, and the record indicates that visits during this period were somewhat sporadic. But he later had full physical custody of his older daughter for the three months prior to the superior court's 2017 final custody order. Nevertheless the superior court reinstated John's limited visitation rights. Without an explanation of its reasoning, we cannot review this decision for an abuse of discretion. Under these circumstances, the superior court was required to explain its decision to restrict John's visitation so severely. Although the visitation decision is vacated with the 2017 custody decision, we find it necessary to identify this deficiency in case it becomes relevant on remand.
D. The Superior Court's Long-Term Domestic Violence Protective Order Was Not An Abuse Of Discretion.
John argues that we should reverse the superior court's protective order because its only requirement was that Andrea could not "commit[ ] further acts of domestic violence." We review the superior court's protective order for abuse of discretion.[39] John contends that "[a] finding of domestic violence with no sanction but to follow the law is meaningless." He points for support to a case where we held that an injunction requiring the state to "obey the law" while managing fisheries was too vague to convey the steps necessary for compliance.[40] But the superior court here was not vague at all; it specifically ordered that Andrea "not threaten to commit or commit acts of domestic violence, stalking, or harassment." We therefore hold that it did not abuse its discretion.
E. John Waived The Argument That The Superior Court Erred By Denying His Motion To Suspend Andrea's Visitation.
After the second day of the October 2017 evidentiary hearing, the superior court scheduled supervised visitation between Andrea and her older daughter. A little over a week later, John filed an expedited motion to suspend that visitation until a therapist could approve its "time, place and manner." On October 16, when the superior court delivered its oral ruling on custody, Andrea's attorney asked whether the motion was moot. The court responded, "Yes." Neither John nor his attorney objected. In the written custody order, the superior court denied the motion in a footnote. John argues on appeal that it was error to deny his motion to suspend visitation, but does not discuss the question of its mootness at the time of the court's ruling. We conclude that John waived this argument; first by doing nothing to correct the court's understanding that the motion was moot,[41] and second by failing to address the basis of the superior court's ruling in his briefing.[42]
*660 IV. CONCLUSION
We VACATE the 2017 custody decision and REMAND for reconsideration of the children's best interests in light of the psychologist's testimony.

We use initials in lieu of the parties' last names to protect the family's privacy. We have chosen to use a pseudonym for the name of their oldest daughter in the caption of this case for the same reason.

AS 25.24.150(g).

See AS 25.24.150(g) -(h).

See AS 11.81.430(a)(1) (justifying the parental use of force "[w]hen and to the extent reasonably necessary and appropriate to promote the welfare of the child").

See AS 25.24.150(h).

We have explained that "[w]hen physicians are called to testify about matters pertaining to the treatment of patients, the distinction between an expert witness and a fact witness inevitably becomes blurred." Miller v. Phillips , 959 P.2d 1247, 1250 (Alaska 1998) ; see also Thompson v. Cooper , 290 P.3d 393, 400 (Alaska 2012) (explaining that treating physicians may be offered as "experience-based experts" whose opinions are based on treatment of the patient).

Although he did not have legal custody of the children, John did have the authority to provide emergency medical care to them.

See Griffith v. Taylor , 12 P.3d 1163, 1166 (Alaska 2000) ; see also del Rosario v. Clare , 378 P.3d 380, 386 (Alaska 2016) (reviewing order enforcing child custody decree for abuse of discretion).

del Rosario , 378 P.3d at 383 (omission in original) (quoting Gunn v. Gunn , 367 P.3d 1146, 1150 (Alaska 2016) ).

AS 25.24.150(c) ("The court shall determine custody in accordance with the best interests of the child ...."); Ronny M. v. Nanette H. , 303 P.3d 392, 403 (Alaska 2013) ("We have emphasized that the best interests of the child remain paramount ...."); Starkweather v. Curritt , 636 P.2d 1181, 1182 (Alaska 1981) ("The paramount consideration in the determination of child custody is the best interests of the child.").

del Rosario , 378 P.3d at 386.

John argues that the superior court abused its discretion and made several erroneous factual findings when analyzing the children's best interests under AS 25.24.150(c). Because we vacate the custody decision with instructions to reconsider the children's best interests in light of the psychologist's testimony, we do not reach these issues.

AS 25.24.150(g). Moreover, the parent's visitation must be supervised until certain conditions are met. AS 25.24.150(j). The domestic violence presumption applies not just when the court issues a custody award as part of a divorce but also when the court modifies custody, as in this case. Williams v. Barbee , 243 P.3d 995, 1001 (Alaska 2010).

AS 25.24.150(h).

See Faye H. v. James B. , 348 P.3d 876, 878 (Alaska 2015) ("Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error." (quoting Yelena R. v. George R. , 326 P.3d 989, 998 (Alaska 2014) )).

See id. ("[W]hether the court used the proper legal standard for applying the domestic violence presumption - including whether the court's findings support applying the presumption - is a question of law, which we review de novo." (quoting Yelena R. , 326 P.3d at 998 )).

See Johnson v. State, Dep't of Corr. , 380 P.3d 653, 655 (Alaska 2016) ("The interpretation of a statute is a question of law to which we apply our independent judgment." (quoting Barber v. State, Dep't of Corr. , 314 P.3d 58, 62 (Alaska 2013) )).

Parks v. Parks , 214 P.3d 295, 301 (Alaska 2009).

AS 11.81.900(b)(57).

While surgical treatment or hospitalization is not necessary to establish serious physical injury, the court of appeals has considered the level of medical response as indicative of the severity of an injury under AS 11.81.900(b)(57). See Konrad v. State , 763 P.2d 1369, 1375-76 (Alaska App. 1988) (holding that "internal bleeding from the spleen [which] healed without treatment within a short period of time" was not serious physical injury but a "collapsed right lung" requiring surgery and hospitalization was).

John points to the child in need of aid context, where "mental injury" is defined as "a serious injury." AS 47.17.290(3). But the statute he cites does not mention serious physical injury. Moreover, we have made it clear that the term "serious physical injury" has the same meaning for the domestic violence presumption as it does in the criminal code. Parks , 214 P.3d at 301.

See Parks , 214 P.3d at 301.

Worden v. State , 213 P.3d 144, 148 (Alaska App. 2009) ("A basic rule of statutory construction 'is that statutes imposing criminal liability should be construed narrowly.' " (quoting State v. ABC Towing , 954 P.2d 575, 579 (Alaska App. 1998) )).

AS 25.24.150(h).

See Faye H. v. James B. , 348 P.3d 876, 878 (Alaska 2015) ("Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error." (quoting Yelena R. v. George R. , 326 P.3d 989, 998 (Alaska 2014) )).

See Johnson v. State , 380 P.3d 653, 655 (Alaska 2016).

The child testified that in addition to beating her with a belt, Andrea put her hands around her neck, threw a cup of juice on her, and continued hitting her after making her get in the shower. But we cannot conclude, and John does not argue, that the superior court's decision not to credit this further testimony in its final decision was clear error. "When the superior court is faced with conflicting evidence, we do not re-weigh it. 'It is the job of the trial court, not the appellate court, to judge the credibility of the witnesses and to weigh conflicting evidence.' " Silvan v. Alcina, 105 P.3d 117, 122 (Alaska 2005) (quoting Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska , 685 P.2d 1211, 1215 (Alaska 1984) ).

He argues that there were "as many as four separate assaults," referring to the juice throwing and beating in the shower as the third and fourth incidents. As explained in note 27, though, the superior court's apparent decision not to credit this testimony in its decision was not clearly erroneous.

But see Timothy W. v. Julia M. , 403 P.3d 1095, 1105 (Alaska 2017) (glossing "more than one incident" as "more than one occasion").

See Alaskans for Efficient Gov't, Inc. v. Knowles , 91 P.3d 273, 276 n.4 (Alaska 2004) ("Dictionaries provide a useful starting point for determining what statutory terms mean, as they provide the common and ordinary meaning of words.").

See, e.g. , Incident , Black's Law Dictionary (10th ed. 2014) ("A discrete occurrence or happening; an event, esp. one that is unusual, important, or violent.").

We interpret statutes "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose." Johnson v. State , 380 P.3d 653, 655 (Alaska 2016) (quoting Barber v. State, Dep't of Corr. , 314 P.3d 58, 62 (Alaska 2013) ).

Minutes, Sen. Judiciary Standing Comm. Hearing on H.B. 385, 23d Leg., 2d Sess. at 15 (Apr. 27, 2004) (statement of Rep. Lesil McGuire) ("If you have been the recipient of serious bodily injury on a repetitive, perpetual basis, it is unlikely that you would want to have a close and loving contact with that person that has been your batterer."), http://www.legis.state.ak.us/PDF/23/M/SJUD2004-04-270815.PDF.

Id. at 18.

Minutes, House Judiciary Standing Comm. Hearing on H.B. 385, 23d Leg., 2d Sess. at 29 (Mar. 1, 2004) (statement of Rep. Lesil McGuire), http://www.legis.state.ak.us/PDF/23/M/HJUD2004-03-011310.PDF.

Id. at 43 (statement of Allen M. Bailey, family law attorney), http://www.legis.state.ak.us/PDF/23/M/HJUD2004-03-011310.PDF.

Bruce H. v. Jennifer L. , 407 P.3d 432, 436 (Alaska 2017).

See id . at 441-42 (holding that the trial court did not sufficiently explain decision awarding father two weeks of summer visitation, 30-minute weekly calls, and alternating spring/winter vacations where father previously had visitation for three nights per week); I.J.D. v. D.R.D. , 961 P.2d 425, 432 (Alaska 1998) ("[T]he trial court must make specific findings supporting a limited award of visitation unless the reasons can be gleaned from the record."); Lone Wolf v. Lone Wolf , 741 P.2d 1187, 1190-91 (Alaska 1987) (holding that the trial court did not adequately explain decision awarding father 32 hours of visitation per weekend where there was no evidence he was an unfit parent).

Cooper v. Cooper , 144 P.3d 451, 454 (Alaska 2006).

Cook Inlet Fisherman's Fund v. State, Dep't of Fish & Game , 357 P.3d 789, 803-04 (Alaska 2015).

Cf. Williams v. Util. Equip., Inc. , 837 P.2d 1112, 1116-17 (Alaska 1992) (holding that a party waived appellate challenge to testimony that purportedly violated trial court's protective order when he did not "make specific objections while [the witness] was on the stand").

Manning v. State, Dep't of Fish & Game , 420 P.3d 1270, 1279 n.51 (Alaska 2018) (holding that an argument was waived due to inadequate briefing).